ESTATE OF DAVID M. DARRIN, PLAINTIFF-RESPONDENT, CROSS-APPELLANT, v. DIRECTOR OF THE DIVISION OF TAXATION (TRANSFER INHERITANCE TAX BUREAU), DEFENDANT-APPELLANT, CROSS-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 6, 1989—Decided April 21, 1989.

438

Before Judges J.H. COLEMAN, DEIGHAN and BAIME.

*Herbert K. Glickman,* Deputy Attorney General, argued the cause for appellant/cross-respondent (*Donald R. Belsole,* Acting Attorney General of New Jersey, attorney, filed a brief on behalf of the Director, Division of Taxation and a brief in response to the cross-appeal; *James J. Ciancia,* Assistant Attorney General, of counsel; *Herbert K. Glickman* on the briefs).

*James C. Pitney* argued the cause for respondent/cross-appellant (*Pitney, Hardin, Kipp & Szuch,* attorneys; *James C. Pitney* and *David G. Hardin* on the brief).

PER CURIAM.

Defendant, The Director of the Division of Taxation, Transfer Inheritance Tax Bureau (Director), appeals from a judgment of

the Tax Court holding that the use of gender-based mortality tables in evaluating life estates is unconstitutional because it discriminates against women. Plaintiff, the Estate of David M. Darrin, cross-appeals from the Tax Court's affirmance of a compromise tax which the defendant assessed on the contingent remainder interest in the life estate of Margaret Darrin, David Darrin's widow. The matter was heard on cross-motions for summary judgment. *Darrin Est. v. Taxation Div. Director,* 9 *N.J.Tax* 419, 420 (N.J.Tax Ct.1987). The parties stipulated to the following facts concerning defendant's calculation of the direct tax on the surviving wife, Margaret A. Darrin's life estate.

David M. Darrin died testate on June 6, 1983. He was survived by his wife, Margaret A. Darrin, who was 58 years old on the date of his death, as well as by three sons, David, Timothy and Drake. His will created a marital trust, with income from the trust to be paid to his wife during her lifetime. The will further provided that the trustee could pay to her such principal as the trustee, in his discretion, felt was advisable for her health, support and maintenance and best interests. Upon decedent's wife's death, the corpus of the trust is to be distributed among decedent's issue, either as his wife shall appoint under a power of appointment limited to one or more of a class consisting of decedent's issue or, if she fails to appoint, as directed in decedent's will. Under his will, decedent provided that all death taxes be paid by the executor from the residuary estate.

On July 10, 1984, decedent's executor filed a New Jersey inheritance tax affidavit which listed a total estate of several million dollars. The executor made payments on account of the New Jersey transfer inheritance taxes assessable against the estate on February 6, 1984, July 12, 1984 and July 9, 1985. On March 21, 1986, the Director sent to the executor a statement for direct taxes assessed against the estate and also a suggested compromise tax on the contingent interests, and a copy of

the computation of the tax. An additional assessment for contingent interest was made for the direct taxes.

The parties stipulated to the following facts concerning defendant's calculation of the direct tax on Margaret Darrin's life estate.

In evaluating life estates, the Director applied factors set forth in separate tables for males and females published in an Internal Revenue Service pamphlet, Publication 823A (December 1970): Actuarial Values II, Factors at 6% Involving One and Two Lives (hereafter publication 723A). Prior to 1977, the Director used unisex tables in evaluating life estates but switched to gender-based tables after the enactment of *L.* 1977, *c.* 219, codified at *N.J.S.A.* 54:36–2. The statute directs that, in determining the value of a life estate, annuity, or estate for a term of years, United States life tables, single life male 6% and single life female 6%, published by the United States Department of Health, Education and Welfare, are to be used with respect to estates of decedents dying on or after January 1, 1978. The Department of Health, Education and Welfare never published such tables, although it did publish certain tables labelled United States Life Tables: 1959–61, publication 1252.

Publication 723A apparently uses the mortality figures in publication 1252, with some technical adjustments, to develop its 6% life tables. The mortality figures published by publication 1252 can be used to compute the present worth of life estates on either a gender-based or sex neutral basis, assuming a 6% annual interest rate. In 1983, the federal government ceased using the gender-based tables currently used by the Director and now uses unisex tables to value life estates, annuities and remainders as required by Treasury regulations § 20,2031–7.

The Director computed the value of Margaret Darrin's life estate in the marital trust by multiplying the value of the trust by the factor for a female age 58 contained in publication 723A—.65988.

On the other hand, if the decedent had been a female sur-
vived by a husband age 58, the value of the surviving husband's
life estate in a marital trust equal to that created by Darrin's
will would be computed by multiplying the value of the trust by
the factor for a male age 58—.57778. This in turn would result
in a lower value for the life estate and a lower tax.

If a gender-neutral factor were used in evaluating the life
estate of an individual age 58 with an interest in a trust worth
the same amount as that created by Darrin's will, the life
interest would have increased which would result in a tax
increase.

The parties also stipulated to certain facts concerning defen-
dant's taxation of contingent interests. They agreed that de-
fendant's witness would testify at trial that his consistent
administrative practice was to enter into compromise agree-
ments with estates based upon tax rates in effect at the time of
a decedent's death, even though the transfers would not take
effect until after January 1, 1985, the effective date of *P.L.*
1985, *c.* 57, which phases out inheritance taxes on transfers to
spouses and descendants.

The Tax Court concluded

that the Director has not established the absence of discrimination against
directly-affected females as a class compared to directly-affected males as a
class, and has not established that statistics justify treating all females differ-
ently from males based on gender-based group averages. Therefore, he has
not met the burden of establishing that the use of gender-based mortality tables
is substantially related to the achievement of the governmental objective of
accuracy in the valuation of life estates. Accordingly, I conclude from the
evidence in this case that equal protection principles preclude the use of the
separate male and female tables referred to in *N.J.S.A.* 54:36–2. The Director is
directed to use the gender-neutral mortality table submitted as part of the
record in administering *N.J.S.A.* 54:36–2 and evaluating the subject life estate.
[9 *N.J.Tax* at 435]

Plaintiff contended that "...the [Transfer Inheritance Tax
Bureau's] offer of compromise improperly bases its assessment
of the potential tax on the subject contingent remainder inter-
ests on rates in effect at the date of decedent's death." *Id.* at
436. It urged that "the rates in effect on the death of the life
tenant should apply, and [sought] an order to compel the

Director to recompute the compromise tax by considering tax rates in effect on the date or dates of likely distribution of the remainder interest." *Id.* at 436. The Tax Court concluded that there was no basis in statutory or reported decisions to support the estate's contention and therefore, on this issue, found in favor of the Director. *Id.* at 437.

On appeal the Director contends that the evidence established that gender-based tables were more accurate than unisex tables, and that their use thus served an important governmental interest—that of accurately evaluating life estates. In the alternative, he contends that it was improper to grant summary judgment in plaintiff's favor because it did not have the opportunity to submit evidence on a disputed material fact—*i.e.*, the accuracy of the gender-based tables. On its cross-appeal from the affirmance of the compromise tax assessed on the contingent remainder in the life estate of the decedent's widow plaintiff argues that the compromise tax is invalid and that the contingent interests should be taxed in accordance with the tax rates in effect at the date of probable transfer.

▮ From our review of the record we are satisfied that the Tax Court properly found that basing the compromise agreement on tax rates in effect at the time of decedent's death, rather than the rates in effect on the date of the distribution of the remainder interests, is correct. The Tax Court noted that the appropriate time for evaluating and assessing any tax on a transfer of a contingent remainder interest is at the time the transfer to the beneficiaries is actually made, and that the tax rate imposed should be that in effect on the date of death of the life tenant. It noted that *N.J.A.C.* 18:26–2.2 provides that the right of the State to impose the inheritance tax on transfers vests at the moment of a decedent's death, so that the law prevailing at the time of death controls the transfers subject to the tax and the rates thereon. The court found that this regulation was entitled to a presumption of reasonableness, and that the plaintiff had not demonstrated that the regulation was inconsistent with *N.J.S.A.* 54:34–2 and *N.J.S.A.* 54:36–1 *et seq.*

■ As to the constitutionality of *N.J.S.A.* 54:36–2, concerning the use of the gender-based group averages to determine life expectancy, we are convinced that such an issue may have a significant impact not only on the particular statute involved, but on other statutes and proceedings in other areas of the law, including rules of court. Therefore, the issue should not be decided merely on affidavits of experts. The issue here "is a very important one involving highly significant policy considerations and obviously should not be decided" on less than a full record, *Jackson v. Muhlenberg Hospital*, 53 *N.J.* 138, 142 (1969), after a plenary hearing with testimony by actuaries, statisticians or other experts in the discipline at issue. Summary judgment generally is inappropriate in an action to declare an ordinance or statute unconstitutional. *See Odabash v. Mayor and Coun. Dumont*, 65 *N.J.* 115, 121 fn. 4 (1974).

The judgment on the issue of calculation of the compromise tax at the rate in effect at the time of the decedent's death is affirmed; the judgment determining that the use of separate male and female tables of life-expectancy referred to in *N.J.S. A.* 54:36–2 violates equal protection principles and is therefore unconstitutional is reversed and the matter is remanded to the trial court for proceedings consistent with this opinion.