CRABTREE, J.T.C.
This is a transfer inheritance tax case wherein plaintiff seeks review of defendant’s determination of a deficiency in tax due with respect to the estate of Elaine H. Blount, who died testate on March 19, 1990. The deficiency is attributable to defendant’s redetermination of the value of decedent’s vested remainder inter *24 ests in three trusts and to a disallowance of a deduction for fees paid to counsel for the beneficiaries of decedent’s estate.
At her death, decedent owned vested remainder interests in three trusts: the trust under the will of Paul E. Heller, the Arnaud G. Heller Insurance Trust and the Arthur E.C. Heller Insurance Trust (collectively referred to hereafter as the “trusts”). The trusts all provided for distribution of principal to the decedent upon the death of the last to die of two individuals, both of whom survived the decedent, namely, Ruth Heller Lowe and Gladys Heller Fenlin, who, on the date of decedent’s death, were 86 and 81 years old, respectively.
The clear market value of the aggregate remainder interests in the trusts on the date of decedent’s death is not in dispute. At issue, in this regard, is the value of the intervening life estates of Ruth Heller Lowe and Gladys Heller Fenlin, which must be subtracted from the date of death value of the principal of the trusts, in order to determine the value of the decedent’s remainder interests therein for transfer inheritance tax purposes.
Plaintiff valued the intervening joint life estates by resort to the current valuation table promulgated by the Internal Revenue Service (IRS) as set forth in IRS Publication 1457, issued August 1989. The interest rate was 10.2%, 120% of the so-called federal midterm rate for March 1990. The factor taken from IRS Publication 1457 for two lives, using an interest rate assumption of 10.2%, was 44.773%. IRS Publication 1457 was, in turn, based upon “U.S. Decennial Life Tables for 1979-1981,” Vol. 1, No. 1, United States Life Tables, Dept. of Health and Human Services Public Health Service Publication No. (PHS) 85-1150-1 August 1985. The factor of 44.773% came from Table 1 of PHS 85-1150-1, Life Table for the Total Population (ie., a gender-neutral table).
Plaintiffs methodology produced a total value for decedent’s remainder interests, after deducting the value of the intervening life estates, of $1,507,387.
Defendant increased the value of the remainder interests to $2,232,245, using the factors set forth in IRS Publication 723A *25 (December 1970), entitled “Actuarial Values II: Factors at 6 percent Involving One and Two Lives.” The data set forth in IRS Publication 723A is in turn derived from United States Life Tables 1959-1961, published by the Department of Health, Education and Welfare as Public Health Service Publication No. 1252, issued December 1964. Table LT6 of IRS Publication 723A, using a 6% interest rate assumption, shows a factor of 66.006% for two females aged 86 and 81 years. Defendant applied the latter percentage to the decedent’s remainder interests in arriving at its determination of value.
After the complaint was filed, plaintiff revalued the remainder interests using Table 3 of PHS 85-1150-1, Life Table for Females (a gender-specific table), from which he derived a factor of 42.272%, using the same interest rate assumption of 10.2%. This calculation reduced the taxable value of the remainder interests from $1,507,387 to $1,423,185. Plaintiff computed the tax attributable to the difference at $13,472 and claimed a refund of that amount.
Plaintiffs principal witness at the trial was Daniel M. Arnold, a consulting actuary, who qualified as an expert in the field of actuarial science.
He testified that the Department of Health, Education and Welfare (now the Department of Health and Human Services) has produced United States life tables every ten years, starting with the 1900-02 period. The tables are based on the decennial census for the middle year, ie., the tables for the years 1959-1961 are derived from census data compiled for 1960. The tables used death registrations from the several states for the decennial bracket of three years. The function of the data, Arnold declared, is to indicate probabilities of death. The deaths in the three bracketed years (the year before the census, the year of the census and the year after the census) are aggregated and the total divided by three to arrive at an average number of deaths for each age group. The tables are further refined by gender, by age group and total population. The data thus compiled, combined with interest rate assumptions, are used by the IRS to determine *26 life estate and remainder factors in connection with federal estate and gift taxes.
When the tables are adjusted every decade, the witness went on, they reflect the changes in mortality which have occurred since the previous census.
Since May 1, 1989, Arnold continued, the IRS has valued life estate and remainder interests in accordance with § 7520 of the Internal Revenue Code of 1986. That statute requires that the most recent mortality experience available be utilized and that the mortality tables shall be revised at least once every decade. In addition, IRC § 7520 requires an interest rate equal to 120% of the federal midterm interest rate in effect for the month in which the valuation date falls. The federal midterm interest rate for March 1990, the month in which decedent died, was 8.52%, and 120% of that rate was 10.27%.
The latest mortality tables available for valuation of the remainder interests in question were the U.S. Decennial Life Tables for 1979-81, PHS 85-1150-1, incorporated in IRS Publication 1457, issued in August 1989. Arnold utilized those tables (first the gender-neutral table, later the female table) with the applicable interest rate of 10.2%, and, utilizing his actuarial expertise, calculated the remainder factor following the death of the survivor of two life beneficiaries aged 86 and 81 years, to be, first, 44.773% (Table 1 — Total Population), then 42.272% (Table 3 — Total Females). Using the same 1979-81 Tables, but with a 6% interest rate, the expert calculated the remainder factor to be, first, 60.362% (Table 1 — Total Population), then 58.238% (Table 3— Total Females).
The tables used by defendant to arrive at an actuarial factor of 66.006% for the remainder interests in question are, as stated above, found in IRS Publication 723A, which is based on deaths in the three-year period 1959-61 and the U.S. Life Tables produced from the 1960 census. None of that data has been adjusted to account for post-1960 changes.
*27 Defendant also disallowed a claimed deduction of $52,000 for counsel fees paid to the law firm of Shanley & Fisher, which represented beneficiaries of the estate. Defendant determined that the fees were not a legal obligation of the estate and were thus not allowable in fixing clear market value under N.J.SA. 54:34-5.
N.J.S.A 54:36-1 provides, pertinently:
When a person shall bequeath or devise, convey, grant, sell or give any property or interest therein, or income therefrom, to a person or corporation for life or for a term of years, and a vested interest in the remainder or copras of such property to a person or to a body politic or corporate, the whole of the property so transferred shall be appraised immediately at its clear market value. The value of the life estate or estate for a term of years shall be fixed in the manner provided in section 54:36-2 of this title. The value of the remainder in the property so limited shall be ascertained by deducting the value of the life estate or estate for a term of years from the appraised market value of the property so limited----
N.J.S.A 54:36-2 provides:
In determining the value of a life estate, annuity, or estate for a term of years, the United States Life Tables, after December 31, 1970, Single Life Male 6% and Single Life Female 6%, published by the United States Department of Health, Education and Welfare, Public Health Service, with interest at the rate of 6% per annum, shall be used and shall be effective with respect to estates of decedents dying on or after January 1, 1978.
The tables referred to in the statute do not exist, a fact which defendant acknowledges and has acknowledged in prior litigation. See Estate of Darrin v. Director, Div. of Taxation, 232 N.J.Super. 437, 440, 557 A.2d 677 (App.Div.1989), aff'g in part, rev’g in part and remanding 9 N.J.Tax 419 (Tax 1987), on remand 11 N.J.Tax 482 (Tax 1991). As a substitute for the non-existent tables, defendant utilized what he felt to be the nearest equivalent, namely, IRS Publication 723A, a derivative of the U.S. Decennial Life Tables for 1959-61.
Plaintiff argues at some length in his brief that N.J.SA 54:36-2 is void for vagueness in view of the nonexistence of the very tables whose use is mandated therein for the valuation of life estates and remainder interests.
Defendant responds that, even though the tables referred to in N.J.S.A 54:36-2 do not exist, the Legislature has indicated clearly *28 that a 6% interest rate assumption be used and that defendant’s use of valuation factors set forth in IRS Publication 723A is an appropriate exercise of the discretion granted to defendant by N.J.S.A 54:50-1.
Apart from the interest rate, which the Legislature has plainly indicated is 6%, the overriding consideration governing defendant’s value determination in inheritance tax cases is the duty under N.J.S.A 54:34-5 to ascertain the clear market value of property subject to tax. Bassett v. Neeld, 23 N.J. 551, 555-56,130 A.2d 1 (1957); Tracy v. Alexander, 17 N.J. 397, 401, 111 A.2d 492 (1955); Rosenthal v. Kingsley, 97 N.J.Super. 286, 289, 235 A.2d 40 (App.Div.1967). Indeed, defendant’s own regulation requires valuation according to clear market value. N.J.A.C. 18:26-8.10(a). As the Supreme Court observed in Bassett, supra defendant “is obliged to consider all relevant criteria in establishing a valuation.” 23 N.J. at 557, 130 A.2d 1. In Tracy, supra, the Supreme Court said:
The bureau’s duty under R.S. 54:34-5 is to determine the ‘clear market value’ of the property subject to the tax---- Determination of value is often difficult ... but, however difficult the discovery of such market value, the statutory standard is the one by which the bureau’s determinations of value are and must be controlled
[17 N.J. at 401, 111 A.2d 492.]
The Darrin litigation involved a challenge to the constitutionality of gender-based mortality tables in valuing a life estate for transfer inheritance tax purposes. The taxpayer in that case contended that the use of female mortality tables, as compared to gender-neutral tables, discriminated against females, as the factor for a female aged 58 (the life beneficiary’s age at the date of decedent’s death) was higher than the factor for a male of the same age. The higher factor resulted in a higher value of the life estate for death tax purposes. The Tax Court held that the Director had not established that the use of gender-based tables was substantially related to the achievement of the governmental objective of accuracy in the valuation of life estates and that accordingly, equal protection principles required the use of gen *29 der-neutral mortality tables. Estate of Darrin, supra, 9 N.J.Tax at 435. The Appellate Division reversed on the ground that the issue should not be decided merely on the affidavits of experts, and remanded the case for “a plenary hearing with testimony by actuarians, statisticians or other experts in the discipline at issue.” 232 N.J.Super. at 443, 557 A.2d 677. On remand, the Tax Court, after hearing expert testimony from both parties, concluded that no equal protection violation existed where the “Legislature, in pursuance of increased accuracy in the life estate valuation process, has chosen to use gender-based mortality tables for inheritance tax purposes.” 11 N.J.Tax at 496.
The leitmotif coursing throughout the Darrin litigation was the paramount importance of accuracy in determining the value of life estates for inheritance tax purposes. Defendant in that case argued for acceptance of the gender-related tables as an aid to increased accuracy in the valuation of life estates.
In that case, the accuracy goal centered around the choice of gender-related tables in preference to gender-neutral mortality tables. In the instant case, that choice is not in issue; rather, the question of accuracy turns on the selection of the most recent mortality tables available, vis-a-vis mortality tables promulgated approximately 30 years before the valuation date.
The Legislative goal of accuracy in valuation undergirds the statutory command of N.J.S.A. 54:34-5, that property be valued according to its clear market value.
I conclude from the credible evidence that accuracy in valuing the life estates in this case — and correspondingly, the remainder interests to be valued for inheritance tax purposes — requires use of the most recent mortality tables available on the valuation date.[1] Those tables were incorporated in PHS 85-1150-1 and IRS Publication 1457 and were derived from U.S. Decennial Life Tables for 1979-81. Furthermore, in light of this court’s decision *30 on remand in the Darrin case, the factors set forth in Table 3, Life Table for Females, with an interest rate assumption of 6% will be applied to the undisputed date of death value of decedent’s share of trust principal (prior to reduction for the intervening life estates).
Thus, the value of decedent’s remainder interests in the trusts, taking into account the value of the intervening life estates, is . $1,962,308.
Plaintiff, in his brief, points to the significant contribution of the law firm of Shanley & Fisher to the administration of the decedent’s estate, including, but not limited to, the firm’s assistance in ascertaining the income tax basis of all the assets in the portfolios of the trusts, the firm’s ability to develop a consensus among their clients, the beneficiaries, and the resolution of issues arising in the course of estate administration such as fiduciary commissions and the executor’s accounting of the estate.
The relevant statute is N.J.S.A. 54:34-5, which provides, in pertinent part:
In determining the clear market value of the property, the following deductions and no others shall be allowed:
c. The ordinary expenses of administration, including the ordinary fees allowed executors and administrators and the ordinary fees of their attorneys.
[emphasis supplied.]
The language of the statute is clear and unequivocal. The deduction for attorneys’ fees is limited to the attorneys for the executor or administrator. The statute specifically limits deductions to the categories of debts and expenses expressly set forth. Thus, no matter how helpful the firm of Shanley & Fisher may have been in the administration of the estate, the fact remains that the firm represented the beneficiaries, not the executor.
*31 Defendant’s disallowance of the deduction for counsel fees paid (or payable) to Shanley & Fisher will be sustained.[2]
Plaintiff may submit his application for the deduction of expenses attributable to this proceeding. Immediately following the court’s ruling on that application, the parties will submit computations pursuant to R. 8:9-3. Thereafter, judgment will be entered.

 The mortality tables for the years 1989-91, the period closest to the valuation date, were not available at time of trial.

 It appears from papers filed with the court in the instant proceeding that Shanley & Fisher served as co-counsel in the prosecution of this tax case. That being so, the court will entertain an application from plaintiff for the deduction of additional counsel fees attributable to this litigation to include services performed by Shanley & Fisher as such co-counsel.