NARAYANAN, J.T.C.
Plaintiff (“Mr. Sicardi”) appeals the Defendant’s denial of deductions for attorney fees and executor’s commissions from the gross taxable estate of the decedent, which if permitted, would provide him an increased inheritance tax refund. Since Mr. Sicardi was not an executor when he incurred attorney fees in a will contest proceeding, and agreed to bear his own legal expenses in that proceeding, the court finds that the Defendant (“Director”) correctly denied a deduction for such fees. Furthermore, the Director correctly applied his regulations which require exclusion of jointly held property from the gross estate for purposes of computing the executor’s commissions, and thus, properly limited the amount of allowable commissions. Therefore, the Director’s motion for summary judgment is granted, and Mr. Sicardi’s cross-motion for summary judgment is denied.

FINDINGS OF FACT

Charlotte Geer died December 13, 2007. In her Will dated January 22, 2005 (“2005 Will” or “Will”), she devised all her tangible personal property including insurance policies (but not money) to Mr. Sicardi, and further made him the sole residuary legatee and beneficiary in the Will. The Will appointed Helen Golen (the decedent’s sister) as the executrix and Mr. Sicardi as the substitute executor if she were to fail to qualify or cease to act as executrix.

Probate Litigation

On or about January 10, 2008, Ms. Golen filed a caveat against the probate of the Will, followed by a complaint against Mr. *77 Sicardi. She alleged that she was the sole specific and residuary-beneficiary, as well as the executrix, under a previous will, which had been executed by the decedent, duly notarized and witnessed, in October 2003 (“2003 Will”). She further alleged among others, a fraudulent modification/alteration of this 2003 Will, and the exercise of undue influence by Mr. Sicardi. She therefore demanded an accounting, and an injunction against Mr. Sicardi’s control over and dissipation of the estate’s assets.
Mr. Sicardi retained the Law Offices of John Manfredonia, Esq. to represent him. A retainer agreement was executed between Mr. Sicardi, as an individual, and Mr. Manfredonia, whereby the law firm agreed to represent the client, Mr. Sicardi, in the Chancery Division proceedings.
Mr. Manfredonia duly filed pleadings on behalf of Mr. Sicardi, which claimed, among others, that Mr. Sicardi was entitled to monies of approximately $795,120.46 in the six (6) bank accounts of the decedent because he was the joint owner with a right of survivorship in those accounts[1] and that the decedent had voluntarily and intentionally named him as such on these accounts. The pleadings also alleged that Mr. Sicardi was entitled to all of the decedent’s assets, including the stock in PSE & G, as the sole and residuary beneficiary.
By order of March 14, 2008, the Chancery Division appointed Sharon Rivenson Mark, Esq., as the temporary administrator, such appointment being in the interests of the estate of the decedent. Ms. Mark was issued temporary letters of administration effective March 24, 2008.
In May 2008, Ms. Mark wrote to Mr. Sicardi asking that he deliver to her all bank books and records of the decedent including the accounts where Mr. Sicardi’s name was added as a joint *78 account holder. Ms. Mark stated that she needed access to the funds in the joint bank accounts not only because it was her duty to take charge of the accounts pending resolution of the litigation and place all the monies in a proper account, but also because she had to timely file state/federal tax returns. Mr. Sicardi promptly provided her the original bank passbooks.
On June 9, 2008, the Chancery Division entered an order granting a pendente lite motion. The order directed that the monies in all of the decedent’s bank accounts, including the six in which Mr. Sicardi was named the joint holder, were to be “delivered to the control” of Ms. Mark. Ms. Mark then notified Hudson City Savings Bank (“Bank”) that pursuant to court order, she was to take control of, and needed immediate access to the monies in the six bank accounts for purposes of paying estate expenses (such as taxes and administration expenses/fees). The Bank (through its attorney) responded that it had to comply with the provisions of the Inheritance Tax statute which did not provide an exemption for court-ordered transfers.* [2] The Bank suggested that due to the Chancery Division’s directive giving “control” over the accounts to Ms. Mark, and due to the “usual custom” of releasing one-half of the balance without inheritance tax waivers,[3] she could immediately withdraw 50% of the amounts in all the accounts with the balance remaining frozen until the Bank’s receipt of inheritance tax waivers from Ms. Mark.
Accordingly, the Bank remitted an amount of $347,793.84[4] made payable to the order of “the Estate of Charlotte Geer.” From the *79 amounts transferred to her by the Bank, Ms. Mark subsequently made estimated payments of $109,572 (inheritance tax); $30,480 (state gross income tax); and $82,585 (federal income tax), totaling $222,637. Subsequent bank statements as to the remaining balances (reporting either interest accrual or automatic renewals of the CDs) were issued by the Bank to “Charlotte Geer, c/o Sharon Rivenson Mark,” and used Ms. Mark’s business address.[5]
The Bank also separately advised Mr. Sicardi that it would not be able to “accede” to his request “to be kept informed of all withdrawals” in view of the Chancery Division’s order that “control” of the joint bank accounts be transferred to Ms. Mark. The Bank suggested that Mr. Sicardi have Ms. Mark provide him with an accounting “of the amounts withdrawn from the accounts and coming into her hands.”

Probate Litigation Settlement

In October 2008, Ms. Golen and Mr. Sicardi executed a stipulation of settlement whereby they agreed that the decedent’s 2005 Will was valid, but modified in that Ms. Golen would be treated as an additional beneficiary under the Will and Mr. Sicardi would be the sole executor. Ms. Golen was to receive $100,000 (less her share of any inheritance taxes, one-half of the court-appointed administrator’s fees and one-half of the estate’s accountant’s fees), and Mr. Sicardi was entitled to the remainder of the decedent’s assets, including the PSE & G stock. Additionally, the six accounts in the Bank were “now” agreed to be Mr. Sicardi’s property “as the sole surviving joint account holder.” Each party also agreed to bear their own legal fees and costs.
The parties also agreed to the following disbursements:
(1) from the amounts remaining with Ms. Mark, the court-appointed administrator:
(a) $20,000 to Ms. Golen,
(b) $80,000 to Mr. Sicardi, and
*80 (c) the balance to be deposited in a separate account for the estate controlled by Mr. Sicardi as an executor until inheritance tax waivers were obtained, after which the balance in this estate account were to be paid to Mr. Sicardi personally;
(2) from the amounts remaining in the Bank;
(a) payment of the balance owed to Ms. Golen (after the offsets),
(b) payment of legal fees owed by Mr. Sicardi to Mr. Manfredonia, and
(c) the balance to “remain with” Mr. Sicardi to be distributed as per his direction.

Probate Settlement Consent Orders

The Chancery Division entered two separate consent orders, both dated October 27, 2008, reflecting the above stipulation of settlement. One dealt with Ms. Mark’s discharge as the court-appointed administrator, and the other addressed the agreement between Ms. Golen and Mr. Sicardi. The order pertaining to Ms. Mark stated, among others, that she was entitled to $11,835.81 as “final and complete payment for fees, commissions and costs in connection with the Estate” of the decedent, and Mr. Sicardi, as executor, approved this payment “for legal fees and costs in lieu of commissions.” It also provided for a $2,500 payment for accountant fees, which Mr. Sicardi, as executor, approved. The order further provided that Ms. Mark withdraw her “fees” from the $116,473.05 remaining in her trust account, and the balance $104,637.24 was to be distributed in accordance with the second consent order.
The second consent order contained most of the terms of the stipulation of settlement as they pertained to Ms. Golen and Mr. Sicardi. These were (for purposes of this litigation):
(a) Ms. Golen’s consent to Mr. Sicardi being the executor,
(b) Mr. Sicardi’s right to, and ownership of, the six accounts in the Bank, and that they were Mr. Sicardi’s “property as the sole surviving joint account holder,”
(c) each party’s obligation of bearing their respective legal costs and fees,
(d) the distribution of $104,637.24 (the balance in Ms. Mark’s trust account) between Ms. Golen ($20,000), Mr. Sicardi ($80,000) and a newly “established account for the estate and controlled by [Mr.] Sicardi as executor” ($4,637.24) “until receipt of an inheritance tax waiver, after which all proceeds shall be distributed to [Mr. Sicardi] personally,” and
(e) the provision of the “original inheritance tax waiver” to Mr. Manfredonia, who was to present the same to the Bank, pursuant to which the Bank would pay *81 Mr. Manfredonia “legal fees owed by [Mr.] Sicardi” as well as monies payable to Ms. Golen under the settlement. The order specified that “[ajny remaining funds shall remain with [Mr.] Sicardi and distributed as per his direction.”
On October 30, 2008, Mr. Sicardi was sworn in, and qualified as, the executor of the decedent’s estate.

Inheritance Tax Proceedings

On or about December 31, 2008, Mr. Sicardi, as executor, filed an Inheritance Tax return claiming a refund of $34,408. The return showed a deduction of $153,626 as counsel fees, and listed the names of Ms. Mark and Mr. Manfredonia. No amounts were deducted as executor’s or administrator’s commissions.
In response to the Director’s request for an explanation of the excessive amount of attorney fees incurred, Mr. Sicardi provided the Director a letter from Mr. Manfredonia which contained an enumeration of the total legal fees sought (namely, $140,637.34, which included Ms. Mark’s fees of $11,835.81 awarded by the Chancery Division), and a justification for Mr. Manfredonia’s fees of $128,801.43.[6] Mr. Manfredonia stated that he was retained to represent Mr. Sicardi in the probate litigation, and his representation “benefited” the estate since it resolved the issues raised therein and resulted in a court order naming Mr. Sicardi as the executor and a beneficiary of the estate.
In the same response to the Director, Mr. Sicardi, for the first time, also sought a deduction of $25,000 as his commission, for acting as the estate’s executor.
The Director then issued a Notice of Assessment whereby he (a) increased the date-of-death value of the PSE & G stock to $67,949; (b) disallowed a deduction for the legal fees of Mr. Manfredonia on grounds the fees were not incurred by and on behalf of the estate but by Mr. Sicardi personally; (c) allowed the claimed deduction *82 for legal fees to $11,835.81 payable to Ms. Mark, the court-appointed administrator; (d) increased the reported executor’s commissions from zero to $3,397.45 (5% commission on the value of the PSE & G stock of $67,949) and declined Mr. Sicardi’s demand for a $25,000 deduction on grounds that commissions were not allowable on the joint bank accounts but only on the assets coming to Mr. Sicardi’s hands as an executor; and (e) imposed the inheritance tax on the remaining net estate to Mr. Sicardi, thus, disallowing a lower taxability on the distribution of $100,000 to Ms. Golen, on grounds it was a distribution pursuant to a settlement agreement. As a result of these adjustments, the Director computed the total tax as $107,954.18 and refunded $1,617.82 ($107,-954.18 tax less estimated payment of $109,572) to Mr. Sicardi.
Mr. Sicardi filed a timely protest wherein he contended that the Director improperly disallowed a deduction for the payment to his attorney, Mr. Manfredonia. He also argued that the executor’s commission was to be based upon the entire assets of the estate (PSE & G stock plus all liquid assets), and that he was entitled to an amount of $33,207.45 in this regard. Finally, he disputed the Director’s disallowance of the lower tax treatment for the amounts distributed to Ms. Golen.
After an administrative conference, the Director issued a final determination upholding his assessment, but increasing the executor’s commissions to $3,629.31. The Director explained that commissions are allowable “on assets which come into the hands of an executor,” therefore the estate could deduct commissions on $4,637.24, the funds remaining in Ms. Mark’s trust account (after certain distributions) and turned over to Mr. Sicardi as executor. This generated an additional refund of $37.10 which was paid to Mr. Sicardi.
In response to Mr. Sicardi’s letter disagreeing with the Director’s final determination, the Director pointed out that he allowed a deduction not only for Ms. Mark’s fees, commissions and costs as ordered by the Chancery Division, but also provided a deduction for commissions on the amounts turned over from Ms. Mark to Mr. Sicardi as executor. The Director also observed that *83 there was “nothing in the record” to show that Mr. Sicardi handled any portion of the remainder of the joint bank accounts as an executor, and therefore, the assessment was proper.
In his complaint challenging the Director’s final determination as to the disallowance of the attorney fees and his executor’s commissions, Mr. Sicardi did not contest the Director’s determination on the taxability of Ms. Golen’s share. Rather, he included his protest to the Director as an attachment to the complaint wherein he had maintained that the $100,000 received by Ms. Golen under the probate litigation settlement should be taxed at a lower rate. Since this issue was not raised in Mr. Sicardi’s cross-motion or opposition to the Director’s summary judgment motion, it is deemed to have been abandoned. See Lady Frances V, LLC v. Director, Div. of Taxation, 24 N.J.Tax 545, 560 (Tax 2009) (a challenge to the assessment amount in the complaint is “deemed to be abandoned” when it is not addressed or briefed in the motions for summary judgment).

CONCLUSIONS OF LAW

Summary judgment will be granted “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46—2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995). A factual issue is genuine “only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, [it] would require submission of the issue to the trier of fact.” R. 4:46-2(c). Although the evidence is to be viewed most favorably toward the non-moving party, summary judgment may not be denied simply because the non-movant demonstrates the existence of a disputed fact. Brill, supra, 142 N.J. at 540-41, 666 A.2d 146. Rather, denial is appropriate only where the evidence is of such a quality and quantity that reasonable minds could return a finding favorable to the party opposing the motion. Ibid.
*84 Here, there are no material facts in dispute. It is not disputed that the monies in the bank accounts held jointly by the decedent and Mr. Sicardi are subject to inheritance tax. See N.J.S.A 54:34—1(f); N.J.AC. 18:26-5.11(a)-(d). The only issues are whether the statutes and regulations support the Director’s disallowance of deductions for attorney fees and executor’s commissions. Therefore summary judgment is appropriate.

Allowable Deductions

The New Jersey Transfer Inheritance Tax Act (N.J.S.A. 54:33-1 et seq.) (“Act”) allows for certain limited and enumerated deductions from the gross taxable estate. Only these statutorily allowed expenses are deductible. See N.J.S.A 54:34-5 (“[i]n determining the clear market value of the property the following deductions and no others shall be allowed----”).
Allowable deductions include “[t]he ordinary expenses of administration, including the ordinary fees allowed executors and administrators and the ordinary fees of their attorneys.” N.J.S.A. 54:34-5(c). The Director’s regulations reiterate the statute, and pi’ovide a deduction “for all the reasonable and ordinary expenses of administering a decedent’s estate including reasonable and ordinary executors, administrators and attorneys fees----” N.J.AC. 18:26-7.9. See also N.J.AC. 18:26-7.11 (attorney fees must be reasonable and the Director can require affidavits in this regard). An executor of a decedent’s estate may thus claim attorney fees and his or her commissions as deductions from the gross taxable estate, and thereby reduce the amount of inheritance tax payable.

(1) Attorney Fees

In La Greca v. Director, Div. of Taxation, 15 N.J.Tax 22, 30 (Tax 1995), this court ruled as follows:
The language of ... [N.J.S.A. 54:34-5(c) ] is clear and unequivocal. The deduction for attorneys’ fees is limited to the attorneys for the executor or administrator. The statute specifically limits deductions to the categories of debts and expenses expressly set forth. Thus, no matter how helpful ... [a law firm] may have been in the administration of the estate, the fact remains that the firm represented the beneficiaries, not the executor.
*85 See also N.J.S.A 3B:14-23(Z) (limiting a fiduciary’s power to “employ and compensate attorneys for services rendered to the estate or ... to a fiduciary in the performance of his duties”). Thus, for attorney fees to be deductible under the Act, they must have been incurred for or on behalf of the executor or administrator of the estate.
Mr. Sicardi argues that he is, and at all times was, the executor of the estate. “In [his] mind” he argues, he was the sole executor from the date of the decedent’s death, and Ms. Mark, the court-appointed administrator, was merely his proxy. Further, he maintains, Mr. Manfredonia represented him in defense of the 2005 Will. Consequently, he asserts that Mr. Manfredonia’s counsel fees are estate expenses, and thus, fully deductible.
Mr. Sicardi’s claims, however, conflict not only with the express language of the Will which appointed Ms. Golen as the executrix, but also with the order of the Chancery Division which qualified him as an executor in October 2008 pursuant to the settlement of the probate litigation. Moreover, nowhere in the Chancery Division’s order is there any provision that Ms. Mark required Mr. Sicardi’s approval or consent regarding any of her decisions or actions pertaining to the decedent’s estate (and Mr. Sicardi conceded to this fact). The correspondence from Ms. Mark and the Bank also does not evidence anything to the contrary.[7] Thus, Mr. Sicardi’s assertions that Ms. Mark was merely acting as his proxy are unsupported.
Further, the retainer agreement between Mr. Sicardi and his attorney evidences that Mr. Manfredonia’s law firm undertook to represent only Mr. Sicardi as an individual and not as a fiduciary since Mr. Sicardi was the only named client in that agreement. The fact that the probate litigation involved the decedent’s Will does not convert Mr. Sicardi’s defense into an action by an executor on behalf of the decedent’s estate. If this were so, the legal fees of any person contesting or defending a will would be deemed an estate expense. Clearly this argument *86 defeats the plain language of the statute which allows a deduction for the fees of “executors and administrators and the ordinary fees of their attorneys.” N.J.S.A. 54:34-5(c) (emphasis added).[8]
In sum, the objective extrinsic evidence overcomes Mr. Sieardi’s subjective assertion that he considered himself the estate’s executor at all times,[9] and that Mr. Manfredonia’s legal bills were incurred by Mr. Sicardi as an executor of the estate. Therefore, the Director properly disallowed a deduction for the attorney fees incurred by Mr. Sicardi in the probate litigation.

(2) Executor’s Commissions

The Director’s regulation, N.J.A.C. 18:26-7.10(a), provides that an executor shall be allowed commissions as “determined in accordance with N.J.S.A. 3B:18-14” unless a “court exercising jurisdiction over the probate of an estate” adjudges otherwise. N.J.S.A. 3B:18-14 provides for a range of commissions that “may be taken” depending on the amount of “corpus received by the fiduciary.” Thus, an executor is allowed a commission of 5% on the “first $200,000” of the corpus; 3.5% on the “excess over *87 $200,000 up to $1,000,000;” and 2% on the “excess over $1,000,000.” Ibid.; N.J.A.C. 18:26-7.10(a).
Unlike N.J.S.A. 3B:18-14, however, the Director’s regulation limits the deductibility of commissions under certain circumstances. As applicable to this case, where the property transferred is jointly held, the regulation provides as follows:
The value of property which is held by the decedent and another as joint tenants with right of survivorship, as trustee for, or payable on death to another or which has been the subject of an inter vivos transfer, in contemplation of, or to take effect in possession or enjoyment at or after death, is to be excluded from the amount on which an executor’s or administrator’s commissions is computed in the absence of the judicial allowance thereon.
[N.J.A.C. 18:26-7.10(c) ]
Our courts have ruled that these limitations are a valid exercise of the Director’s regulatory authority. See In re Estate of Widenmeyer, 70 N.J. 458, 360 A.2d 396 (1976) (N.J.A.C. 18:26-7.10(d) is valid); In re Estate of Talakowitsh, 127 N.J.Super. 290, 293, 317 A.2d 371 (App.Div.1974) (N.J.A.C. 18:26-7.10(c) and (d) are valid).
In Talakowitsh, the decedent’s estate comprised of certain real property and “jointly held property.” 127 N.J.Super. at 292, 317 A.2d 371. Pursuant to the regulations, the Director excluded both for purposes of computing the permissible executor’s commissions. Ibid. The executor contended that the Director could not exclude such property for purposes of computing the executor’s commissions because the probate statute[10] had no such limitation but allowed a 5% commission on estate assets of up to $100,000. Id. at 293, 317 A.2d 371. The Director argued that his regulation was defensible not only because the probate statute itself was permissive in nature, but also because the limitation would curtail the potential for tax evasion especially where there was only one beneficiary who was an executor since “the executor-beneficiary could easily evade inheritance taxes on his share of the estate by taking that share as ‘commissions,’ and thus be able to claim deduction for what in reality is an inheritance.” Id. at 291-92,317 A.2d 371. Agreeing with the Director, the court stated:
*88 This is not a suit to recover executor’s commissions. This is an inheritance tax case. The executrix is the sole beneficiary of the estate. There is but one question: what are "ordinary” fees which under N.J.S.A. 54:34-5(c) may be deducted for inheritance tax purposes? The Director’s regulation determines what such “ordinary” fees are. We hold that the promulgation of N.J.A.C. 18:26-7.10 is a reasonable regulation to prevent evasion of taxes on the value of property which the executrix inherited and was well within the authority of the Director to promulgate.
[Talalcowitsh, supra, 127 N.J.Super. at 293, 317 A.2d 371].
Thus, pursuant to the plain language of N.J.A.C. 18:26-7.10(e) and Talakowitsh, the Director’s initial decision to exclude the date-of-death joint bank account balances from the corpus base and limit the commissions to $3,397.45 was correct.
Mr. Sicardi maintains that the joint bank accounts were treated as part of the decedent’s estate that was subject to probate, therefore, they must be included in the corpus base on which he should be allowed commissions pursuant to N.J.A.C. 18:26-7.10(a). He points out that the Chancery Division’s order of June 9, 2008 specifically directed that monies in the joint bank accounts be “delivered to the control” of Ms. Mark, he had to turn over all the bank books to her, and further, he had no access to the remaining amounts since they were frozen by the Bank. He also points out that the bank statements pertaining to the balances in those joint accounts did not reflect his name but showed the accounts as “Charlotte Geer, c/o Sharon Rivenson Mark, Esq.” These facts, he argues, are evidence that the non-probate joint accounts were converted into “probatable” assets, and therefore he is entitled to executor’s commissions on the same.
The Director does not contest the argument that commissions are generally allowable on assets subject to probate inasmuch as his final determination states that if property comes into the hands of an executor, it is generally subject to an allowance of commissions. This principle is supported by the plain language of N.J.A.C. 18:26-7.10(a) (commissions allowed on property “received” by a fiduciary), and its analysis by the Supreme Court. See Widenmeyer, supra, 70 N.J. at 460-61, 360 A.2d 396 (specifically devised real property is properly excludable from the corpus base under N.J.A.C. 18:26-7.10(d), however, if such property is sold to satisfy the estate’s debts, expenses or taxes, it “comes into” *89 the fiduciary’s hands, and is therefore subject to commissions under N.J.A.C. 18:26-7.10(a)).
The Widenmeyer Court reasoned that upon the donor’s death, title to real property specifically devised goes directly to the donee or devisee, thus, an executor has no power or right therein. 70 N.J. at 461, 360 A.2d 396 (citing and quoting 6 N.J. Practice (Clapp, Wills and Administration (3d ed.) § 1025, p. 569)). Thus, the Director’s exclusionary regulation, N.J.A.C. 18:26-7.10(d), was proper. However, when such property is sold to satisfy the estate’s debts, then it “comes into” the executor’s hands as contemplated by the probate law N.J.S.A. 3A:10-2 (now N.J.S.A. 3B:18-12 et seq.), therefore, the Director’s exception to the exclusion was also correct.*[11] 70 N.J. at 462, 360 A.2d 396.
Just as specifically devised real property passes directly to the devisee, joint bank accounts are also, by statute, payable upon death to the surviving account holder “as against the estate.” See N.J.S.A. 17:16I-5(a). Thus, such monies are normally not part of the decedent’s estate subject to probate.[12] Based on the Widen-meyer reasoning, these accounts are hence properly excludable from the corpus base for purposes of computing commissions pursuant to N.J.A.C. 18:26-7.10(c) since title to such monies passes directly to the surviving joint account holder. Nonetheless, if the joint account funds are under the control of, used and expended for estate purposes by a fiduciary due to insufficient
*90 estate assets, then, pursuant to the analysis in Widenmeyer, commissions are payable on the same. This is the logical conclusion because Widenmeyer relied upon probate law allowing commissions, N.J.S.A. 3A:10-2, and that same law, albeit replaced by N.J.S.A. 3B:18-14, is specifically incorporated in N.J.A.C. 18:26-7.10(a).[13] Although the terminology in N.J.S.A. 3B:18-14 is slightly different in that it allows commissions on property “received” by a fiduciary, the difference is neither substantively or substantially significant to warrant a different conclusion.
The court must therefore decide, whether under the facts of this case, the joint bank accounts were received by the fiduciary so as to be eligible for executor’s commissions. It cannot be disputed that Ms. Mark was authorized to take control over the joint bank accounts, and did so. She paid the decedent’s taxes out of the monies turned over to her from these accounts. Had she provided the requisite inheritance tax waivers to the Bank, she would have been able to withdraw or use the remainder monies in those accounts. Thus, the facts here indicate that she exercised control of and power over these bank accounts, and liquidated a portion of the same for estate expenses.
However, Ms. Mark, as administrator, was allowed $11,835.81 as her “final and complete payment for fees, commissions and costs in connection with the [ejstate.” Pursuant to N.J.A.C. 18:26— 7.10(a)(1) which limits commissions to the amount allowed by the probate court if that amount is lesser “than that determined by the application of the rates set forth in [N.J.A.C. 18:26-7.10(a) ]” this is the deductible amount since there was no further judicial allowance on the jointly held bank accounts as required by the Director’s regulations.
Mr. Sicardi maintains that Ms. Mark was paid only legal fees, not commissions since the Chancery Division’s first consent order recited that Mr. Sicardi, as executor, approved payment of $11,835.81 only for “legal fees and costs in lieu of commissions.” He also notes that he sought a deduction for this amount on the *91 inheritance tax return as “counsel fees” and the Director accepted this label by allowing a deduction as such.[14] He claims that he is thus entitled to an executor’s commission on the entire amount of the joint bank account balances.
Even if there is deemed to be a conflict between the two sentences in the first consent order, Mr. Sicardi is still not entitled to an executor’s commission simply because he was not an executor during the time Ms. Mark was the court-appointed administrator; he did not receive any corpus of the estate; and he did not administer the estate. The enabling statute, N.J.S.A. 54:34-5, the Director’s regulation, N.J.A.C. 18:26-7.10(a), as well as the incorporated statute, N.J.S.A. 3B:18-14, all require that there be a fiduciary who has rendered services to the estate. The only fiduciary here (until October 2008 when Mr. Sicardi was appointed executor) was Ms. Mark. Whatever she was paid was allowed as a deduction for tax purposes. The monies that Ms. Mark, as administrator, turned over to Mr. Sicardi, as executor, were also treated by the Director as subject to commissions. Therefore, there is simply no basis, whether in the facts here or in law, permitting Mr. Sicardi receive an executor’s commission on the entire date-of-death value of the joint bank accounts.
Moreover, even if Ms. Mark would be deemed ineligible for commissions on the portion of the joint bank account funds she did not receive (since they were “frozen” until the Bank received inheritance tax waivers), the facts here do not support such commissions being awarded to Mr. Sicardi. In the course of settling the probate litigation, the parties explicitly agreed, and the Chancery Division ordered, that Mr. Sicardi’s control and possession over the monies remaining in the joint bank accounts were due to his status as a joint bank account holder with rights of survivorship, and that he was, as an individual, entitled to the same. Indeed, this ownership in his individual capacity was asserted, and court-ordered, even as to the balance transferred to *92 Mr. Sicardi by Ms. Mark, and he was executor of such amounts only until the inheritance tax waivers were obtained. Mr. Siear-di’s argument that he received or controlled these funds as a fiduciary is belied by the undisputed documentary evidence to the contrary.
Since the remaining funds in the joint bank accounts did not “come into” Mr. Sicardi’s hands nor were “received” by him in his capacity as an executor, the fact that the Chancery Division’s second consent order directed that Ms. Golen be paid the balance of her agreed to entitlement of $80,000 (net of the offsets) from these funds, does not entitle a commission on the same. Allowing Mr. Sicardi an executor’s commission under these circumstances directly implicates the concerns addressed in Talakowitsh. See also, Off v. Div. of Taxation, 16 N.J.Tax 157, 171 (Tax 1996) (“[a]s between the administration of an estate and the taxation of an estate, the concern ... is with the taxation of an estate and hence with N.J.S.A. 54:34-5.”). Therefore, the Director’s decision that Mr. Sicardi is not entitled to any commissions upon the joint bank accounts is proper.
Lastly, Mr. Sicardi contends, for the first time in these summary judgment motions, that he should be entitled to an additional executor’s commissions for his extraordinary services to the estate pursuant to N.J.S.A. 3B:18-16.[15] The argument can be summarily dismissed. N.J.A.C. 18:26-7.10(e) specifically provides that additional commissions will “not be considered” in the absence of a probate court ordered judgment. No such judgment is present here.

CONCLUSION

The Director’s motion for summary judgment is granted. An order and judgment effectuating this opinion will be simultaneously entered by this court dismissing plaintiffs complaint.

 The six accounts were held in Hudson City Savings Bank. One was a checking account, one was a savings account, and the remaining tour were short-term Certificates of Deposit (“CD"). As of the date of death, the balances were as follows: $36,378.73 (checking); $119,204.19 (savings); $492,409.51 (CD); $76,909.28 (CD); $43,629.63 (CD); and $26,589.12 (CD), thus totaling $795,120.46.

 N.J.S.A. 54:35-19 prohibits a bank from releasing any funds in its possession that belong to or "stand in the name of” a decedent and a joint account holder without prior consent of the Director and without retaining sufficient monies to pay the assessable inheritance tax plus interest. See also NJ.A.C. 18:26-11.17 (barring release of funds unless an inheritance tax waiver is first obtained).

 A bank is permitted to release up to 50% of the funds in deposit to, among others, an executor, administrator or a surviving joint tenant. NJ.A.C. 18:26-11.16(a), (b).

 This amount is lesser than $397,560.23, which is one-half of the date-of-death balance of $795,120.46.

 The Bank had also suggested that Ms. Mark re-title the accounts in her name as the administrator. The subsequent bank statements do not reflect a re-titling in this manner.

 In e-mails between Mr. Manfredonia and Mr. Sicardi's wife, Mr. Manfredo-nia pointed out that while he felt that Mr. Sicardi's litigation expenses were nondeductible, and his fees were not contingent upon the deductible amounts, he would provide information to the Director as to the reasonableness of his legal fees.

 See supra pp. 77-80.

 Note that R. 4:42-9 provides that each party must bear his or her or its own legal fees unless specifically excepted. One such exception is where a court in a probate action makes "an allowance" that attorney fees be paid “out of the estate of the decedent.” R. 4:42-9(a)(3). Further, where the court grants probate, it may allow legal fees of the proponent and/or contestant of the will or codicil be paid out of the decedent’s estate. Ibid. Any such allowance must be “included in the judgment or order” issued in connection with the decision on the matter. R. 4:42-9(d). Here, the Chancery Division’s order of October 27, 2008 specifically provided that each party had to bear their own legal costs and fees. Thus, under R. 4:42-9 also, Mr. Sicardi’s legal fees are non-deductible.

 While not considered or deemed controlling for purposes of this litigation, the court notes that in his answer to the Chancery Division complaint filed by Ms. Golen and the estate, Mr. Sicardi pleaded as an affirmative defense that he "be permitted to serve as Executor in light of the physical incapacity of Plaintiff” indicating that Mr. Sicardi was cognizant of the fact that the Will did not appoint him as the executor until Ms. Golen ceased or refused to act as executrix. A deposition transcript of Barbara Bromirski (power of attorney to Ms. Golen) indicates that Ms. Golen specifically expressed that she did not cede nor desire to cede her status as the executrix of her sister’s estate.

 The case involved former NJ.S.A. 3A:10, which was amended and replaced by NJ.S.A. 3B:18, et seq.

 N.J.A.C. 18:26-7.10(d) as it then existed provided as follows:
In addition, executor's or administrator’s commissions are not allowed on:
1. Real estate specifically devised, except where the personal estate is not sufficient to pay the debts and costs of administration of the estate;
2. Real estate not specifically devised, except where the personal estate is not sufficient to pay the debts and costs of the administration of the estate, or to pay pecuniary legacies.

 The statute does not apply if there is "clear and convincing evidence” to the contrary. Case law also allows such funds to become part of the estate subject to probate if there is evidence of undue influence or creation of such accounts as a matter of convenience. See Pascale v. Pascale, 113 N.J. 20, 549 A.2d 782 (1988); Sadofski v. Williams, 60 N.J. 385, 290 A.2d 143 (1972); In re Estate of Penna, 322 N.J.Super. 417, 731 A.2d 95 (App.Div.1999); Petruccio v. Petruccio, 205 N.J.Super. 577, 501 A.2d 593 (App.Div.1985).

 See L. 1981, c. 405, p. 1618 (N.J.S.A. 3A:10-2 is the “source” oí N.J.S.A. 3B: 18—14).

 In a letter to the Chancery Division, Ms. Mark pointed out that "in an effort to foster settlement" she had "agreed to accept legal fees and waive commissions as court-appointed administrator.”

 N.J.S.A. 3B:18-16 permits a probate court upon "an intermediate or the final settlement of the fiduciary’s accounts,” to grant additional "corpus commissions” if there has been a "showing that unusual or extraordinary services have been rendered by the fiduciary for which the fiduciary should receive extra compensation.”