Will of Patton: Patton and others, Executors, Appellants, vs. Tax Commission, Respondent.

*March 14—April 12, 1938.*

For the appellants there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Louis Quarles* and *James T. Guy* of counsel, all of Milwaukee, and oral argument by *Mr. Guy.*

For the respondent there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, attorneys, and *Neil Conway,* inheritance tax counsel, of counsel, and oral argument by *Mr. Persons* and *Mr. Conway.*

Fritz, J. On this appeal the executors of the will of Ludington Patton, deceased, challenge that part of an order

determining the inheritance tax in the estate of the deceased which included 1,599 shares owned by Patton out of a total issue of 2,500 shares of the capital stock of the Lodgewood Company. That company was a close, personal holding corporation authorized to engage in the business of buying, selling, and holding securities, and operating a farm. Patton died at the age of sixty-two years on October 20, 1934. On that date the Lodgewood Company's assets consisted of stocks, bonds, loans receivable, insurance policies on Patton's life, and a farm and equipment in Virginia. In appraising the 1,599 shares of stock, the county court appraisers based their valuation on a schedule of assets and a balance sheet, which were part of a certified public accountant's report, submitted by the executors to the appraisers. The latter adopted as correct the "approximate market value" on October 19, 1934, reported by the accountants for the corporation's bond and stock holdings, and also the amounts reported by them as to the cash in bank and loans receivable, and $43,784 as the cash surrender value on insurance policies for $130,000 on Patton's life. The appraisers deducted substantial amounts from the value stated in the balance sheet in respect to the farm, and also for undisclosed income tax liability; and those items are not in dispute. On the basis of valuations reported by the accountants and adopted by the appraisers, the proportionate value of Patton's 1,599 shares of the Lodgewood Company stock was $542,061, or $339 per share. However, those valuations did not include $87,825.20, which the Lodgewood Company, in collecting the face value of $130,000 and accrued dividends of $1,609.80 on the policies on Patton's life, realized in excess of the cash surrender value of $43,-784 to which the appraisers limited their valuation of those policies.

The Tax Commission contended that the appraisers' valuation of the Lodgewood Company assets should be increased

to the extent of that difference of $87,825.20; and the court entered an order increasing the value of Patton's 1,599 shares and his gross estate accordingly. In appealing from that order the executors contend that through the death of Patton, who was its principal officer and guiding head, the Lodgewood Company sustained financial loss exceeding or at least equal to that difference of $87,825.20, and that therefore the court erred in not allowing the deduction of that amount in arriving at the value of the Lodgewood Company's assets and shares of stock.

In passing upon those contentions, it must be noted that sec. 72.01, sub. (8), Stats., relating to inheritance taxes, provides that "the tax so imposed shall be upon the clear market value" of the property; that secs. 72.13 and 72.14, Stats., require appraisals to be made at the "fair market value;" that sec. 72.15, subs. (1) and (3), provide that the court shall determine the "cash value;" and that sec. 72.15 (5), Stats., states that the property shall be appraised at its "clear market value." In *Will of Matthews,* 174 Wis. 220, 182 N. W. 744, the court held that,—

"Under sec. 1087—13, Stats., requiring property to be appraised at its fair market value for inheritance tax purposes, and sec. 3821, requiring the general appraisers of a decedent's property to fix its value in money, the terms 'fair market value' and 'value in money' are practically identical, the 'value in money' being the fair equivalent in money for the thing valued and the 'fair market value' the sum for which it could be exchanged in the open market under fair conditions, the purpose of the valuation not being an element to be considered in either case."

And in relation to the stock of a close corporation, as to which there were no recent sales establishing the market value, we said in *Estate of Lemke,* 206 Wis. 5, 6, 238 N. W. 806:

"The company was a close corporation. Its stock was not listed on the stock exchange and there were practically

no sales of its stock within recent years. It had no market value. A determination of the inheritance tax due from the estate required that the actual value of this stock be ascertained."

The executors, to establish that the Lodgewood Company sustained a loss of at least $87,825 upon and by reason of Patton's death, rely on testimony to that effect by two witnesses who knew him and of his ability, skill, and experience in corporate management and finances, and who took into consideration that while he was president and in charge of the affairs of the Lodgewood Company and its predecessor, their assets had increased four hundred per cent in fourteen years. However, on cross-examination one of those witnesses testified that in appraising the value of the stock of the Lodgewood Company, on the day of Patton's death, he would take the stocks, bonds, and securities, which it owned, at their liquidating value on that day; and in explanation thereof said:

"The value as of that day would not be affected by his death at all. The only thing is, as a result of his death the company in the future might not make so much money as they had in the past."

The other witness testified to the same effect, so far as the corporation's government bonds were concerned, but was not so sure that the same was true as to its list of stocks, which he had not analyzed. In support of their contention, the executors cite *Newell v. Comm'r* (7th Cir.), 66 Fed. (2d) 102, and *In re Reed's Estate,* 243 N. Y. 199, 153 N. E. 47. In the *Newell Case, supra,* the court held that the proceeds of an insurance policy payable to the Ingalls Stone Company, upon the death of Charles C. Ingalls, its founder and one of its officers, should be included in its assets in appraising the value of its stock for inheritance tax against his estate; and that it was error not to find the amount of loss sustained by the corporation through his death and de-

duct that amount from the proceeds of the policy. In *In re Reed's Estate, supra,* the court, in connection with deciding that the insurance on the life of an officer of a corporation and payable to it should be included in fixing the value of its stock to determine the base for the inheritance tax, noted merely by way of *obiter dictum* that if there had been proof that the corporation sustained loss by reason of the officer's death, the question as to whether that loss should be offset against the insurance might present itself.

On this appeal the Tax Commission contends that the rule adopted in the *Newell Case, supra,* as to the value of the stock of the Ingalls Stone Company, which was probably an operating corporation, should not be held applicable to a close, personal holding corporation like the Lodgewood Company, whose assets consisted almost entirely of bonds and stocks which were appraised at but their market value, without including anything for the going value or good will of the Lodgewood Company. That contention is sound. All of the assets of that company, which were included in the appraisers' valuation (excepting the comparatively small item of farm property), consisted of liquid securities or assets which had a definite, established, and known daily market value, and were equivalent thereto and readily reducible to cash at that value at any given time; and the amount of that cash value, together with the $131,609.80 realized on the insurance policies, and the low value placed by the appraisers on the farm property, constituted the actual value in money of those tangible, liquid corporate assets at the time of Patton's death. As nothing is included in the amount of that cash value on account of the good will or going value of the Lodgewood Company, it is improbable that that cash value of those assets was diminished or affected by reason of Patton's death. As the appraisal must be made as of that date, it is immaterial, in view of the nature of its business and the tangible and liquid character of the assets

appraised, that, as a result of the death, the corporation may not make as much money in the future as it has in the past. Consequently, the fair market value of Patton's Lodgewood Company stock was the proportionate share attributable thereto on the basis of the equivalent in money, at the time of his death, of the corporation's tangible, liquid assets; and the matured value of the policies in question must be included in those assets without any deduction for loss which the corporation may sustain in the future by reason of his death. It follows that the order under review must be affirmed.

*By the Court.*—Order affirmed.