## WEBER v. RASQUIN, Collector of Internal Revenue.

### No. 196.

Circuit Court of Appeals, Second Circuit.

Jan. 9, 1939.

Cullen & Dykman, of Brooklyn, N. Y. (Francis L. Durk, Jules Haberman, and Charles J. Dodd, all of Brooklyn, N.Y., of counsel), for plaintiff-appellant.

Michael F. Walsh, U. S. Atty., of Brooklyn, N. Y. (James W. Morris, Asst. Atty. Gen., Sewall Key and Frederic G. Rita, Sp. Assts. to Atty. Gen., and Michael F. Walsh, U. S. Atty., and Frank J. Parker, Asst. U. S. Atty., both of Brooklyn, N. Y., of counsel), for defendant-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The executrix of the will of John W. Weber, deceased, brought action to recover $15,558.38 alleged to have been illegally exacted by the defendant Collector of Internal Revenue for estate taxes. The validity of the plaintiff's claim depends on the correctness of the valuation by the Commissioner of Internal Revenue of 1,497 shares of the capital stock of William Ulmer, Inc., at $183.17 per share which the plaintiff had returned for estate taxes at a value of only $100 per share. The amount sued for represents the estate tax on the value set forth in the return as increased by $83.17 per share.

William Ulmer, Inc., was a New York corporation with a capital of the par value of $550,000 consisting of 5,500 shares of $100 each, of which the decedent owned 1,497 shares, his widow, the plaintiff, owned 1,253 shares, and her sister, Mrs. Becker, and other members of her family owned the remainder.

The corporation had originally been engaged in the business of manufacturing and selling malt beverages but with the advent of national prohibition in 1919 it ceased manufacturing and continued in business only for the purpose of managing and liquidating its assets which consisted chiefly of real property and mortgages thereon. The decedent John W. Weber died on May 26, 1933, leaving the 1,497 shares of stock of William Ulmer, Inc., among the assets of his estate. The stockholders of that corporation had generally acted in harmony and the management of its affairs and the offices and directorships were divided between the Weber and Becker families.

The shares of stock had never been listed on any exchange or sold in the market prior to the time of the death of John W. Weber. A return was submitted by the executrix in which the assets of the corporation were valued and a statement of its net worth was given. The Commissioner appraised the stock upon the basis of the net value of the assets as submitted by the executrix. She had employed George Horton, of the real estate firm of Buckley

& Horton, to appraise the real property and certain mortgages. Seven of these mortgages were in default and were valued by Horton at less than their face value; the remaining twenty-one were carried in the return at par. The face amount of all the mortgages was $610,427 and the total value reported after allowing $29,895 as discount upon the mortgages in default was $580,530. The total valuation of the assets submitted by the executrix as computed by Scovell, Wellington & Company, certified public accountants, was $1,007,-470.44. In arriving at the value of the 1,497 shares of stock of William Ulmer, Inc., the Commissioner simply divided the net worth of the corporate assets amounting to $1,007,470.44 by the total shares of the stock outstanding, or 5,500 shares, and $183.17 per share was the result.

The plaintiff had called an over-the-counter broker named Doughty who testified that he had examined the report of Scovell Wellington & Company and the supporting schedules submitted by the taxpayer which included Mr. Horton's appraisal; that he considered that the appraisal reflected the true value of the mortgages and the real estate, and that he had taken it as one of the bases or as a factor in arriving at a proper value to place upon the stock. But he testified that the stock was not in his opinion worth more than $100 per share and he based his opinion on his experience as a broker, coupled with his examination of the schedules and his knowledge that a person buying the stock would have no voice in the management of a corporation that was controlled by the Weber and Becker families. At the close of the evidence each side moved for judgment, whereupon the trial court directed judgment for the collector on the ground that the plaintiff had not sustained the burden of proving that the valuation of the Commissioner was not correct.

In Article 13 (3) of Treasury Regulations of 1934 relating to Estate Tax it is provided that: "In the case of the stock of a close corporation, the value shall be determined on the basis of the company's net worth, earning power, and dividend-paying capacity, and all other relevant factors bearing upon the value of the stock. Complete financial and other data upon which the estate bases its valuation should be submitted in duplicate with the return * * *".

The trial judge said in his opinion that: "A careful perusal of the method by which Buckley and Horton arrived at the valuation of the real estate and mortgages indicates that they made allowances for (1) the non-liquidity of these assets; (2) the expense incidental to any normal liquidation of same; and (3) the abnormal economic conditions which existed at the time of the decedent's death. This firm's appraisal and report fixed the net worth of the corporation somewhat in excess of $1,000,000. This appraisal was made apparently for tax purposes. It is safe to assume that the lowest values possible were placed on the real estate and mortgages. To some extent, the plaintiff is now bound by the appraisal."

The judge also referred to the income tax returns of the corporation and said that in 1928 the dividend on the stock was $77,000; in 1929, $55,000; in 1930, $55,000, and in 1931, $55,000. These dividends, however, were to a large extent paid out of surplus. The judge also said that it was admitted that the earnings in 1928 were $28,299.90; in 1929, $21,147.66, and in 1931, $10,313.42. He, however, neglected to state that in 1930 the accounts submitted showed a loss of $36,556.35, and in 1932 a loss of $10,243.37. He added to the earnings $24,000 per year because of payments by the corporation to members of the family in salaries which he found to be unnecessary and ended his findings by stating that "under all these circumstances, the Commissioner's conclusion as to the net worth of this corporation was correct."

It seems reasonably clear that Buckley & Horton in their appraisal of the property of William Ulmer, Inc., made no allowance for the difficulty in liquidating the assets. The judge assumed, as we think without warrant, that such an allowance had been made and accordingly treated the assets as though capable of immediate liquidation and did not take into account the expense and loss of income likely to be incurred in reducing the corporate properties to cash. Particularly did he fail to make any allowance for expenses incident to the liquidation of the mortgages held by the corporation. Liquidation of mortgages at the time of the decedent's death and ever since has been notoriously difficult and has resulted in substantial losses both when foreclosure has taken place or when cash realization has been had through private

sale. Furthermore, the judge seems to have disregarded the small amount of earnings of the corporation between 1928 and the time of the death of the testator. If for each year we add $24,000 as excessive salaries to these earnings the totals would stand as follows:

| | Profit | Loss |
|---|---|---|
| 1928 | $52,299.90 | |
| 1929 | 45,147.66 | |
| 1930 | | $12,556.35 |
| 1931 | 34,313.42 | |
| 1932 | 13,756.63 | |
| | $145,517.61 | |
| Deduct loss.... | 12,556.35 | |
| | $132,961.26 | |

Upon the basis of the foregoing data, the average annual earnings for the five years would equal $26,592.25 per annum. The amount of $26,592.25, computed as the average yearly earnings, would if capitalized at 6% show a principal of less than $500,000. While we do not say that a rate of 6% would necessarily be proper for estimating the return upon the real estate and mortgages, the fact that a capitalization on that basis would indicate a value of less than half that found by the appraisers tends to show that the net worth which they reported should not have been adopted as the sole basis for determining the value of the decedent's stock.

It may be argued that, as the corporation was in process of liquidation, its earnings were of no account in computing the value of the stock. But the liquidation had certainly been extremely slow during the fourteen years between the advent of the prohibition law in 1919 and the date of the death of John W. Weber. A minority stock interest could not enforce liquidation and there was no proof that liquidation was desired if a situation should develop which made it expedient for the company to retain the assets and manage and lease the real estate. The trial judge did nothing but compute the fractional interest of the decedent as a stockholder in the assets of the corporation without making any deduction for the expenses incidental to liquidation, if it should take place, or for the small earnings of the stock if it did not take place. This, we think, was error. He disregarded the Treasury Regulations, and instead of determining a value for the stock of decedent by taking into account

(1) his fractional share of the net worth of the corporation; (2) the expenses of liquidation of the assets, and (3) the earning power and dividend-paying capacity of the stock, he reached a conclusion based upon a consideration only of the net worth. Newell v. Commissioner, 7 Cir., 66 F.2d 102; Laird v. Commissioner, 3 Cir., 85 F.2d 598.

The judgment is reversed and a new trial is ordered with directions to proceed in accordance with the views expressed in this opinion.