CARROLL K. BASSETT, WILLIAM B. K. BASSETT, ROBERT WATSON POMEROY, II AND FREDERICK C. VAN DUZER, EXECUTORS OF THE LAST WILL AND TESTAMENT OF MARGARET K. BASSETT, DECEASED, APPELLANTS, v. AARON K. NEELD, DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENT.

IN THE MATTER OF THE TRANSFER INHERITANCE TAX ASSESSMENT IN ESTATE OF MARGARET K. BASSETT, DECEASED.

Argued February 25, 1957—Decided March 18, 1957.

*Mr. Meredith N. Stiles, Jr.,* argued the cause for the appellants (*Messrs. Lum, Fairlie & Foster,* attorneys; *Mr. Ralph E. Lum, Jr.,* of counsel).

*Mr. Joseph A. Jansen,* Deputy Attorney-General, argued the cause for the respondent (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney).

The opinion of the court was delivered by

BURLING, J. Margaret K. Bassett died on February 28, 1954, a New Jersey resident. The state inheritance tax has an impact upon 2,619 shares of stock of Bassett Estates, Inc., by virtue of gifts made by the decedent in contemplation of death or as a part of her estate at death. The "clear market value" of the stock (*R. S.* 54:34-5) was reported at $68.746 per share. The Director of the Division of Taxation has determined the value to be $116.53 per share. From this determination the executors appealed to the Superior Court, Appellate Division (*R. S.* 54:33-2) and we certified the cause prior to a review below.

Bassett Estates, Inc. was organized in 1930 by the decedent and her late husband, Carroll P. Bassett. They each contributed individually owned real estate and securities to the corporation in exchange for stock. Through the years the stock has been closely held and has remained within the Bassett family. It was never traded on the market. The tenor of the operation has remained the same—a family investment in securities and real estate.

The total appraised value of the corporate assets (balance sheet—12/31/53) was nearly $1,900,000. Of this amount approximately $1,200,000 represented fixed assets of realty and equipment; investment securities amounted to $366,000; the entire stock of the Commonwealth Land Co. was owned by the corporation and was appraised at $165,000; and the balance was in receivable mortgages, notes and other accounts and cash on hand.

The realty holdings consist of rental property in Summit, New Jersey; offices, retail stores and apartments. These are actively managed by nine employees. In addition the corporation owns an extensive farm property of some 700 acres. It receives a rental income from tenants on this property and operates a dairy business which regularly employs six men. The Commonwealth Land Company, a wholly owned subsidiary, owns and rents a small office building and is developing other property for sale as building lots in the Summit area.

■ In valuing the stock of Bassett Estates, Inc., the examiner in the Transfer Inheritance Tax Bureau restricted his analysis to the net assets of the corporation. That is, he subtracted total liabilities from total assets (appraised as of decedent's death) and divided the remainder (net assets) by the total shares outstanding. (In legal parlance this method has been termed a net asset value criterion.) This resulted in a value of $116.53 per share.

The market experts who filed opinions on behalf of the executors did not restrict themselves to a net asset approach. They considered other factors as well, *e. g.*, the minority position of the stock, earnings, dividend record, a by-law restriction upon the sale of the stock. The five opinions submitted ranged from $68.7 to $78 per share as the clear market value.

The examiner did not disregard the expert analyses submitted by the executors because of a mere difference in opinion. They were rejected by holding that the various criteria used in the reports to construct a market value were wholly inapplicable in valuing the stock of "closely held holding companies." The examiner's Finding No. 15 recites:

"15. That the appraisal methods employed by the various appraisers for the estate have application, if at all, only in the case of the valuation of shares of stock of closely held operating companies. Such methods, however, have *no application, as a matter of law,* in the case of the valuation of shares of stock of closely held holding companies, and, for this reason, have been disregarded in establishing the value of the stock of Bassett Estates, Inc."

There is a substantial difference between rejecting *per se* all accepted criteria in establishing market value of closely held stock and considering these aids but attributing minimal significance to them upon the facts of a particular case. *In re Nathan's Estate,* 166 *F.* 2d 422, 426, 427 (9 *Cir.* 1948). Our inquiry concerns the former situation; questions which might arise from the latter are not before us.

■■ The starting point in valuation problems is the statute itself. *R. S.* 54:34-5 ordains that the transfer in-

heritance tax is to be computed upon "the clear market value of the property transferred." *Grell v. Kelly,* 132 *N. J. L.* 450, 451 (*Sup. Ct.* 1945). Given an established market the solution is simple; absent actual sales the appraiser moves into a hypothetical market, *Newberry v. Walsh,* 20 *N. J.* 484, 497 (1956), which he constructs by using criteria which will likely gauge the thinking of one who desires but is not compelled to sell and one who is willing but not compelled to buy. *Schroeder v. Zink,* 4 *N. J.* 1, 13 (1950). This is a highly complex process which does not admit of exactness. The difficulty, however, is not to be overcome by disregarding it. "The statutory standard is the one by which the bureau's determinations of value are and must be controlled." *Tracy v. Alexander,* 17 *N. J.* 397, 401 (1955); *Grell v. Kelly, supra.*

██ Net asset value (sometimes referred to as "book value") is seldom the same as clear market value. *Ketler v. Commissioner,* 196 *F. 2d* 822, 827 (7 *Cir.* 1952); *Aldrich v. Geahry,* 367 *Pa.* 252, 80 *A. 2d* 59, 61 (*Sup. Ct.* 1951). One authority suggests that an assumption of equality is justified only in the case of an investment or holding company in which the book value of the principal assets are adjusted daily to reflect their current market value. *Stiegelmeier, "Valuation of Closely Held Stock for Estate Tax Purposes,"* 45 *Ill. Bar. J.* 18, 22 (1956). An inventive idea without facilities to produce it may be worth more on the market than a plant without ideas. Market value reflects the degree of confidence in potential earnings while net asset or book value disregards all but the present.

Because the statute speaks in terms of "clear market value" the decided emphasis is upon that pole of valuation. For example, in *Grell v. Kelly, supra,* the former Supreme Court gave decisive preference to a private sale of stock for which no active market existed as against the Director's valuation upon net assets. The rationale of *Grell* was emphasized in *Tracy v. Alexander, supra,* although we found no legal fault in starting with a net asset base and discounting that by virtue of other relevant factors where closely held stock was

involved. There is strong indication in *Renwick v. Martin,* 126 *N. J. Eq.* 564, 605 (*Prerog.* 1939) and *Plum v. Martin,* 132 *N. J. Eq.* 1, 6 (*Prerog.* 1942), that asset value alone is the only proper consideration where the stock is closely held. These cases cited *In re Moore's Estate,* 104 *N. J. Eq.* 400 (*Prerog.* 1929), in support where asset value was the sole ingredient because "the 'clear market value' is impossible of ascertainment." This attitude was disapproved in *Grell v. Kelly, supra,* and *Tracy v. Alexander, supra.* And it is to be noted that the *Moore case,* 104 *N. J. Eq.,* at *page* 402, went only so far as to say:

"* * * at any rate, such a determination [i. e., on net asset or book value] may be taken as a basis, and modified according to such other circumstances as appear * * * which might affect the valuation." (Explanation supplied)

That this was the thought of Vice-Chancellor Buchanan in the *Moore* case is evident by his opinion in *Wimpfheimer v. Martin,* 127 *N. J. Eq.* 587 (*Prerog.* 1940), where at *page* 602 he stated:

"So, also, to determine the value of these notes, under the circumstances, the 'book value' method of determination may properly be used as a basis. Appellants, indeed, do not contend otherwise. The 'book value,' however, is not necessarily to be taken as the actual market value,—the 'clear market value' or 'fair market value' prescribed by the statute. It is to be taken as the *basis*, and is to be modified according to such other circumstances as appear (if any) which might affect the valuation. *In re Moore's Estate, supra.* In the instant case there are such other circumstances."

The conclusion to be drawn from the statute and decisional authority is that the Director is obliged to consider all relevant criteria in establishing a valuation of closely held stock, and that while net asset value may provide a proper basis, other relevant criteria are to be evaluated and proportionately employed to affect the net asset basis. This principle is recognized in the vast majority of cases bearing on the point. *E. g., Laird v. Commissioner,* 85 *F.* 2*d* 598

(3 *Cir*. 1936); *Weber v. Rasquin*, 101 *F. 2d* 62 (2 *Cir.* 1939); *Worcester County Trust Co. v. Commissioner*, 134 *F. 2d* 578 (1 *Cir*. 1943); *Ketler v. Commissioner*, 196 *F. 2d* 822 (7 *Cir*. 1952); *In re Moffett's Estate*, 369 *Pa.* 159, 85 *A. 2d* 109 (*Sup. Ct.* 1952); *In re Rowell's Estate*, 132 *Cal. App. 2d* 421, 282 *P. 2d* 163 (*Cal. App.* 1955). But *cf. In re Patton's Will*, 227 *Wis.* 407, 278 *N. W.* 866 (*Sup. Ct.* 1938), and see *Rice, "The Valuation of Close Held Stocks,"* 98 *U. of Pa. L. Rev.* 367 (1950).

The federal estate tax is geared to "fair market value." *Sec.* 81.10, *Estate Tax Reg.* 105. The Commissioner of Internal Revenue in *Revenue Ruling* 54–77, *I. R. B.* 1954–9 has considered in detail the factors which may merit analysis in valuing closely held stocks. Although the following factors are not all-inclusive, they are indicative of the approach in the federal field:

"1) The nature of the business and the history of the enterprise including the date of incorporation. 2) The economic outlook in general and the condition and outlook of the specific industry in particular. 3) The book value of the stock and the financial condition of the business. 4) The earning capacity of the company. 5) The dividend paying capacity. 6) Good will. 7) Sales of the stock and the size of the stock to be valued. 8) The market price of stocks of corporations engaged in the same or similar line of business which are listed on the exchange."

See, in addition, *Willcox, "Valuation of Close Held Business Interest," The Trust Bulletin, vol.* 35, *No.* 1, *p.* 36 (1955); *Oxenfeldt, "Valuation of Untraded and Closely Held Securities," The Analysts Journal, vol.* 9, *No.* 4, *p.* 33 (1953); *Stiegelmeier, supra,* 45 *Ill. Bar J.* 18 (1956); *C. C. H. Inheritance, Estate and Gift Tax Reporter, State Compilation, par.* 1820.

We appreciate the perplexity of the problem. The examiner who made the findings in the present case has been dealing with these problems for 30 years and has the training necessary to reduce the abstract into a certain concrete figure which will have the mark of an experienced judgment. The weight to be accorded each relevant factor will understandably

vary in each particular case, and this is where the expertise of the taxing authorities is brought to bear.

By way of argument the Director anticipates that family investments would soon be transferred to family corporations if net asset value is not an exclusive criterion in cases such as this. It is said that "assets having an undisputed value could be transferred, and the tax consequence of such transfers greatly diminished, merely by placing the legal ownership of such assets in a holding or investment corporation at a figure less than the value of the assets held."

There are several infirmities in this argument, not the least of which is the definition of a "holding or investment corporation" in the eyes of the Director. The examiner's findings are not enlightening on the point, the transfer inheritance tax law does not set up the particular class, nor are we informed of any agency rule which describes the term and the treatment to be accorded. See *Colonial Trust Co. v. Kraemer*, 63 *F. Supp.* 866, 871 (*D. C. D. Conn.* 1945). The term "holding company" is not a term of art in the decisional law. It has been used in various senses from that of a corporation organized and operated for the sole purpose of holding a controlling interest in the stock of one or more other corporations to that of an ordinary operating company which quite incidentally owns stock in another corporation. 13 *Am. Jur., Corporations, sec.* 1381.

There is no suggestion by the examiner that the organization of Bassett Estates, Inc., was principally motivated by thought of tax advantage. From all that appears the organization was a convenient and lawful method of holding and managing the property and securities which the decedent and her husband owned individually. Taking the corporate form it was subject to all the attendant advantages and disadvantages. It is a point of some significance that in 1952 the Director characterized Bassett Estates, Inc., in a. different light. Carroll P. Bassett, the decedent's husband, died in that year. We are told that $99.75 represented the value per share upon a net asset valuation and the Director accepted a value of $86.44 for inheritance tax purposes. In

1952, other criteria in establishing "clear market value" were not only considered but accorded some weight; in 1956 not only was no weight accorded to other relevant factors, they were declared to be foreign to the computation.

 We decide nothing more than this: the Director in valuing the stock of a close corporation where a sound market price has not been established is required to consider all criteria which are relevant in constructing a sound valuation. He may not reject these considerations and look solely to net asset value in the absence of some statute or rule which might direct otherwise in particular cases. We do not decide the weight to be accorded each factor that enters into the determination for this is dependent upon the varying circumstances of each case and calls for expert knowledge in the field.

 While the statute appears to allow the reviewing court to enter an independent finding of value, *R. S.* 54:33–2, see *Newberry v. Walsh, supra; Grell v. Kelly, supra,* we are not disposed to do so. *Tracy v. Alexander, supra,* 17 *N. J.,* at *page* 402. The error here is one of method, *Commissioner of Internal Revenue v. McCann,* 146 *F.* 2d 385 (2 *Cir.* 1944), and it is proper to remand in order that this may be corrected and as corrected subjected to the experienced judgment within the Division of Taxation.

The determination is reversed and the cause remanded to the Division of Taxation for appropriate action.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and WEINTRAUB—6.

*For affirmance*—None.