NARAYANAN, J.T.C.
This is the court’s opinion in connection with the parties’ respective motions for summary judgment in the above captioned inheritance tax matter. For the reasons set forth below, the court finds the defendant properly determined that the shares of a publicly traded company inherited by the decedent Claire Schines-tuhl from her brother Prescott Schinestuhl must be separately valued as of the date of her death, and not about two years later when the sale proceeds of the shares were distributed by her brother’s estate.

UNDISPUTED FACTS

Background,

Prescott Schinestuhl (hereinafter “Prescott”) was the brother of decedent Claire Schinestuhl (“Claire”). Prescott died testate on September 13, 2004. By his Will of July 10, 2000, he left his entire estate to Claire and appointed her as executrix of his Will. His Will required that the beneficiary survive him by forty-five (45) days, meaning that Claire should have been alive on the forty-fifth day after his death.
As executrix, Claire applied to the Essex County Surrogate’s Court for a probate of Prescott’s Will. Probate was denied on or about October 28, 2004 because the Will was “not executed in manner and form as required by law,” and therefore was “not” Prescott’s Last Will and Testament.
Soon after this, namely, on November 7, 2004, Claire died. Her death was fifty-four days after Prescott’s death. She left a Will dated September 14, 2003. The Will appointed Claire’s cousin, Mary Acquadro (“plaintiff’) as the executrix. Claire’s Will was admitted to probate on or about December 22, 2004 and plaintiff was issued “letters testamentary” in this regard.
On or about July 18, 2005, plaintiff filed a complaint with the New Jersey Superior Court to have Prescott’s Will probated and *292 letters of administration issued in her favor. By its order dated September 16, 2005, the Superior Court granted this relief. Thus, in addition to administering Claire’s estate, plaintiff was also authorized to administer Prescott’s estate.

Prescott’s Inheritance Tax Return

Once she had Prescott’s Will probated, and about one year after Prescott’s death, plaintiff filed a New Jersey resident inheritance tax return on behalf of Prescott’s estate on October 26, 2005. On Schedule B(l) of the return, she reported the date-of-death values of personal property in Prescott’s estate as follows:
Provident Bank (10 accounts) $ 361,177
Bank of America (5 accounts) $ 154,892
PNC Bank (1 account) $ 43,337
22,121 shares of Paxar Corp. (“Paxar”) $ 477,371
1991 Chevrolet $ 1,000
Electrical Workers Death Benefit $ 6,000
TOTAL $1,043,777
On Schedule A of the return, she also reported real property jointly held by Prescott and Clame with a date-of-death market value of $92,000, and thus, the value of Prescott’s half-share as $46,000. However she did not provide any information as to how the value of the decedent’s equity in the real property was determined, as was required in this Schedule.
By his notice of assessment issued in July 2006, defendant (“Director”) increased the date-of-death value of the shares of stock to $480,016. He also disallowed a small portion of expenses claimed for attorney fees and executor’s commissions. This resulted in additional tax plus interest of $1,271.85. There is no dispute with respect to this assessment.

Claire’s Inheritance Tax Return

On or about January 2, 2007 (and about two years after Claire’s death), plaintiff filed a New Jersey resident inheritance tax return in connection with Claire’s estate. On Schedule A of the return, she reported the real property which Clame had jointly held with Prescott (until Prescott’s death) with a date-of-death market value *293 of $92,000 based upon a “contract of sale.” The entire $92,000 was included as the value of Claire’s interest in the property since she inherited Prescott’s 50% share in the same. The contract of sale attached to the parties’ moving papers was dated August 27, 2005, the seller being plaintiff as executrix of Claire’s estate, and the buyer being Marvin Wyche, residing at 237 Raymond Avenue, South Orange. The HUD settlement statement dated October 28, 2005, also attached to the moving papers, indicates that the real property was sold by plaintiff as executrix of Claire’s estate for $92,000, to the buyer Marón Properties, LLC (which entity had the same street address as Wyche, the individual named as the buyer in the contract of sale).
On Schedule B(l) of the tax return, plaintiff reported a total of $1,328,007 as the date-of-death value of Claire’s personal property. An attached sheet itemized the various assets comprising this amount. One such item was listed under the heading “Cash Proceeds” and titled “Estate of Prescott Schinestuhl (Net)” in an amount of $752,328.00.[1] Yet another item was the Electrical Workers Death Benefit of $6,000.
The Director issued a notice of assessment on July 10, 2007. He increased the reported proceeds from Prescott’s estate to $871,913. He explained this change as the “inheritance due to the decedent from the Estate of Preseott[ ]” which was “calculated as $980421 Net Est[ate] less $108508 inheritance tax & interest paid.” He also deleted the inclusion of $6,000 since the same was “reported & taxed on brother’s (Prescott) Inheritance Tax Return.” After a minor reduction in administrative expenses claimed, the Director assessed the tax due as $214,896.48, but due to prior payments, provided a refund of $23,042.87.
*294 Plaintiff filed a timely administrative protest on August 6, 2007. She contended that the Director valued Claire’s inheritance as of the date of Prescott’s death instead of using Claire’s date-of-death. She stated that while this was incorrect, the Director presumably did so because it was impossible to ascertain the date-of-death value of Claire’s inheritance from Prescott. This was because as of Claire’s death, the Surrogate’s denial of the probate of Prescott’s Will was still in effect, as a result of which all of Prescott’s remaining blood relatives (specifically his nieces and nephews) were also potential beneficiaries of Prescott’s estate. Plaintiff maintained that the value of Claire’s inheritance became fixed and final after plaintiff, as executrix, liquidated Prescott’s assets and distributed the same to Claire’s estate in the amount of $752,328 on or about October 12, 2006. Thus, plaintiff claimed, the “clear market value” of Prescott’s inheritance, an asset of Claire’s estate, was as of the date of liquidation (i.e., distribution) of that inheritance. Plaintiff clarified that she was not seeking to “diminish[ ]” the value of Claire’s inheritance due to “change in the market value of Prescott’s assets after his death.” Rather, she argued, there could be simply “no value ... on Claire’s inheritance until after her interest was determined by the judicial decision” (ie., after the probate was granted) “and distribution to her estate could be lawfully made.”
It appears that after this protest, there was some communication between an auditor of the Division of Taxation assigned to the case and plaintiffs counsel in 2008 whereby the auditor considered reverting the value of Prescott’s inheritance to the amount as reported on Claire’s inheritance tax return, namely, $752,328, which would generate a further refund. The additional refund did not occur because the auditor’s re-consideration was rejected by his supervisor.
Subsequently, by letter of May 12, 2009, the Director partially agreed with plaintiffs protest to the extent that Prescott’s assets, inherited by Claire, should be valued as of the date of Claire’s death, not as of the date of Prescott’s death. The Director asked the plaintiff to “come back with a revaluation of all of said assets” after which he would issue a corrected assessment.
*295 Almost a year later, by its letter of March 9, 2010, plaintiffs counsel responded to the Director’s request for revaluation of the inherited assets as of Claire’s date-of-death. The letter noted that the difference between the plaintiffs distribution amount of $752,328 and the value of assets listed on Prescott’s return could be “traced to the valuation of the 22121 shares of Paxar Corporation.” The letter explained that on Prescott’s return the value of these shares as of Prescott’s death was reported as $477,371. However, when they were sold “for the benefit of Claire’s estate, the value had shrunk to $395,046.10 for a difference of’ about $82,325. Thus, plaintiffs response to the Director’s May 2010 request focused only upon the depreciation of value of the stocks in Paxar from the date of Prescott’s death until its liquidation.
The Director then examined the value of the Paxar stock as of the date of Claire’s death. The Director’s computations attached to plaintiffs moving papers shows that he computed an average price of the stock for three dates. The first was “a/o prescott’s d/d” (meaning “as of’ Prescott’s “date of death”) with the high and low amounts for September 2004 from which the auditor computed $21.79 as the average of these two, multiplied the same by the number of shares for a total of $482,016. The second was “a/o claire’s d/d” where the auditor noted that the average per share was $21.48 according to Paxar’s 2004 annual report, and multiplied this by the 22,121 shares for a value of $475,159.60. The third was a computation of $21.50 per the 2006 annual report (the “liquidation date” of the shares by plaintiff), which when multiplied by 22,121 shares showed a value of $476,601.50.
Another sheet produced with the moving papers had Paxar’s share trading prices on the New York Stock Exchange in 2003-04 and in 2005-06. The 2003-04 summary indicates the high and low prices for the four quarters in 2003 and 2004. The auditor’s writings indicate that he averaged the high and low prices for the third and fourth quarters of 2004 to arrive at $20.45 and $22.50 respectively. He then averaged these averages to arrive at $21.48. His hand-written note indicates that this value was “a/o date of death 11/7/04.” Yet another sheet shows Paxar’s trading *296 prices on the New York Stock Exchange in 2005-06. This summary indicates the high and low prices for the four quarters in 2005 and 2006. The auditor’s hand-written notes indicate “a/o liquidation date 10/12/06” and his computation of the average price for the fourth quarter of 2006 as $21.50.
Upon the court’s query, the Director provided a certification on how he computed the net value of Prescott’s assets which were inherited by Claire. He certified that based upon “historical stock data” (being the same information reproduced in the preceding paragraph) the average value of each share as was $23.56 as of Claire’s date of death, which when multiplied by the number of shares (22,121) produced a value of $521,159.
By letter of January 20, 2011, the Director issued his final determination whereby he notified plaintiff that the initial assessment issued in 2007 was incorrect inasmuch as the auditor had used the date-of-death of Prescott rather than Claire. The Director stated that the tax had been re-computed “to reflect the value of the asset in question” as of Claire’s death (the asset presumably meaning the shares of Paxar) which resulted in an additional refund of $1,038.44. The notice of assessment in this regard (computed as of January 26, 2011) indicated the change to the value of Prescott’s inheritance as $865,056. This was the “net” value of the estate of Prescott as of Claire’s death (or total value of the assets of $973,564 less tax plus interest paid on Prescott’s estate of $108,508).
In response to the court’s query as to the itemization of the value of Prescott’s estate as inherited by Clame, the Director stated that he arrived at the “value of [Claire’s] inheritance from the Estate of Prescott[]” by totaling the amounts reported on Prescott’s inheritance tax return, specifically, the bank balances (listed above, see supra) of $361,177; $154,892; and $43,337, the date-of-death values of the ear ($1,000); the death benefit ($6,000); and the 50% of the real property ($46,000), for a total of $612,406. The Director certified that plaintiff had provided no evidence to show that these values as reported on Prescott’s tax return were anything other than the assets’ value as of Prescott’s date of death, and that because Claire’s death was so close in time to *297 Prescott’s death (ie., within 54 days) the values could not have changed so drastically. Therefore he accepted the amounts reported on Prescott’s tax return as being the value of those assets as of the date of Claire’s death also. The Director then added the value of the Paxar shares of $521,159 (which he computed at $23.56 per share, see supra) for a grand total of $1,133,565. He deducted therefrom $114,001 (deductions claimed on Prescott’s tax return for attorney fees and executor’s commissions as adjusted by the Director by his July 6, 2006 notice of assessment against Prescott’s estate) and $46,000 (50% of Claire’s share of the real estate), after which he deducted $108,507.47 (inheritance tax paid on Prescott’s estate). This provided a net amount of $865,056.53, which was reflected in his January 26, 2011 notice of assessment.

FINDINGS

The issues raised herein are twofold. The first is whether the value of Claire’s inheritance from Prescott should be determined as of the date of Claire’s death or whether the same should be valued as of the date her estate received a distribution from Prescott’s estate. This issue in turn raises the question whether Claire’s inheritance is an asset requiring its own independent valuation, or whether the Director properly valued each asset comprising the inheritance as of Claire’s date-of-death. These issues involve pure questions of law requiring an interpretation and application of the New Jersey Transfer Inheritance Tax Act (.N.J.S.A. 54:33-1 et seq.) (“Act”). Therefore, the matter is ripe for summary judgment. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995) (summary judgment will be granted “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law”).[2]
Pursuant to the Act, inheritance tax is imposed “upon the right of succession to real and personal property transferred by a decedent in specified cases. The tax is levied upon the transferee, *298 and the amount thereof depends upon the value of the pi’operty transferred and the transferee’s relationship to decedent.” Gould v. Director, Div. of Taxation, 2 N.J.Tax 316, 319-320 (Tax 1981) (citations omitted). Unless otherwise provided by statute, the tax is due and payable at the decedent’s death. N.J.S.A. 54:35-1.[3]
In this connection, the term “transfer” means the “passing of property, or any interest therein, in possession or enjoyment, present or future, by distribution by statute, descent, devise, bequest, grant, deed, bargain, sale or gift.” N.J.S.A 54:33-1; N.J.A.C. 18:26-1.1. The term “property” means “the interest of the testator ... passing or transferred to the individual or specific legatee” which is not exempt from taxation. N.J.S.A. 54:33-1. A “transfer occurs at the date of death and the value of the property is determined on that date.” Estate of Kollinger v. Director, Div. of Taxation, 4 N.J.Tax 652, 655 (Tax 1982).
The tax is “computed upon the clear market value of the property transferred.” N.J.S.A 54:34-5. Thus, the Director’s regulations provide that “[a]ll the real, personal property, tangible and intangible subject to the [tax] is appraised according to its clear market value on the date of decedent’s death.” N.J.AC. 18:26-8.10. These regulations further clarify that the tax on the clear market value is “only upon that portion in excess of the exemptions and deductions allowable under the law on the date of the transferor’s death at the rates then in effect.” N.J.A.C. 18:26-2.3. In turn, “clear market value” is defined as “the market value *299 of any property included in any transfer, less any deductions allowable under the law.” N.J.A.C. 18:26-1.1.
Plaintiff argues that Claire’s rights to her inheritance were unclear as of the date of her death because Claire was denied probate of Prescott’s Will, which meant that Prescott’s nieces and nephews could become equal beneficiaries of Prescott’s estate. Plaintiff states that since probate of Prescott’s Will remained uncertain when Claire died, nothing “transferred” to Claire on her death. However, since the Act imposes a tax upon the right to “receive” property, the clear market value of Claire’s inheritance was established only when her estate actually received a distribution of the inheritance in October of 2006, almost two years after Claire’s death.
Although plaintiff’s argument is couched as a valuation of “inheritance,” in essence it is the tried-but-rejected argument that post-death events control the imposition of tax under the Act. The denial of probate of a Will is no more controlling in the application of the Act than a challenge to the validity of the Will or the filing of a caveat to the probate of a Will. The ancillary estate proceedings in another judicial forum do not overcome the Act’s clear mandate that property is deemed transferred, and tax is deemed imposed, as of the date of death of the decedent. See Off v. Director, Div. of Taxation, 16 N.J.Tax 157, 171 (Tax 1996) (“[a]s between the administration of an estate and the taxation of an estate, the concern ... is with the taxation of an estate and hence with N.J.S.A. 54:34-5”); Donovan v. Baldwin, Director, Div. of Taxation, 10 N.J.Tax 224, 226 (Tax 1988) (transfers of a decedent’s estate by post-death agreements, whether or not judicially sanctioned, does not overcome the principle that the Act taxes the transfers as originally contained in the decedent’s will); N.J.A.C. 18:26-2.11 (where distribution under a will is “otherwise than as provided in the will” the tax is “nevertheless computed in accordance with the terms of the will admitted to probate”).[4] Thus, in Estate ofKollinger, supra, this court ruled as follows:
*300 [The Director] advances the seductively simple proposition that, since the tax is a transfer tax measured by the value of property passing to the transferee, it should be imposed only on the value of property actually transferred, or, to put it differently, only claims which diminish the property passing to the beneficiary should be allowed.
A view of the statutory scheme embodied in the transfer inheritance tax statute discloses the fundamental flaws in defendant’s reasoning. Defendant’s position presupposes that the tax is measured by the state of facts existing on the date of final distribution, not the date of death. Consistent therewith, any post-mortem appreciation or depreciation in asset values would be taken into account. That, however, is not the law. The critical valuation date is the date of death and neither appreciation nor decline in asset values thereafter has any bearing on determination of the tax.
[[Image here]]
Thus, ... the legislative design requires that the tax be calculated on the basis of asset values and debts as they appear on the date of decedent’s death, except for contingent or contested claims, which, by their veiy nature, are unascertainable on the critical date.
[4 N.J.Tax at 656-657]
Indeed, even the law governing probate proceedings specifies that property devised by a Will devolves to the beneficiary immediately upon death of the decedent. See N.J.S.A 3B:1-3 (“[u]pon the death of an individual, his real and personal property devolves to the persons to whom it is devised by his will ... ”). Consequently, the 2006 date of distribution by Prescott’s estate to Claire’s estate cannot supplant the Act’s clear language that a transfer is deemed to occur on the decedent’s date-of-death.
To overcome the Act’s mandate that valuation must be as of the date-of-death of the decedent, plaintiff contends that the value of Claire’s inheritance was a contingent interest, with an unascertainable value as of her death because the Surrogate denied a probate of Prescott’s Will. Plaintiff argues therefore, for purposes of the Act, the Director must use other indicia and factors. The other criteria, according to plaintiff, are the undisputed facts that until she was appointed administratrix of Prescott’s estate in September of 2005, the assets in his estate could not be liquidated, but after she administered his estate and sold the shares, the “potential nature of Claire’s inheritance became actual and presented a *301 basis to determine its clear market value with unconditional certainty.” Plaintiff relies upon Grell v. Kelly, 132 N.J.L. 450, 41 A.2d 122 (1945) and Bassett v. Neeld, 23 N.J. 551, 130 A.2d 1 (1957), both of which ruled that since stock in closely-held companies lacked readily ascertainable market value, the Director must consider any and all other relevant criteria which will help establish its price between a willing buyer and willing seller in a hypothetical market. See also N.J.A.C. 18:26-8.15 (where the stock is not publicly traded, such as in the case of a closely-held corporation, other criteria such as the entity’s sales or financial data, is used to establish a clear market value).
First, the cases plaintiff relies upon can be easily distinguished. Unlike those cases, there is no dispute that the shares in Paxar owned by Prescott and inherited by Claire were publicly traded and as such had easily ascertainable values by reference to their trading prices on the New York Stock Exchange. See In re Estate of Romnes, 79 N.J. 139, 145, 398 A.2d 543 (1979) (“market value of shares of stock of corporations listed on a stock exchange can be determined directly by reference to published market quotations”); N.J.A.C. 18:26-8.18(a) (valuation of publicly traded stocks is “on the basis of the intermediate price between the low and high price prevailing on the date of death”); N.J.A.C. 18:26-8.18(a)(1) (absent sale of stock “listed on the stock exchange on the date of death” value for purposes of the Act is “either the mean between the highest and lowest selling price for the previous day, or the nearest trading day prior to the date of death, or the prorated value used for Federal estate tax purposes reflecting the mean between the highest and lowest selling price on the nearest trading dates” before and after “the date of death”).
Second, plaintiff’s argument is based upon a questionable premise, namely that Claire’s inheritance (ie., her right to succeed to the ownership and possession of Prescott’s assets) was a contingent interest, and therefore, had no clear market value. In Estate of Franko v. Director, Div. of Taxation, 23 N.J.Tax 1, 4-5 (Tax 2006), this court interpreted the term “contingent interest” as one where “no present interest exists, and that whether such interest or right will ever exist depends on a future uncertain event,” and *302 “[i]f the person who is given a future interest is (a) in being and (b) ascertained and (c) the gift is not made contingent upon an uncertain future event, the interest is vested in the beneficiary, whether it be of realty or personalty; failing any of these three circumstances, the interest is contingent.” (citations and quotations omitted). Here, the only condition to Claire inheriting the entire estate of Prescott was that she survive him by 45 days. This she did. There were no other conditions in the Will which prevented the assets from devolving onto Clame immediately upon Prescott’s death. Simply because Prescott’s Will was not probated as of Claire’s death does not make Claire’s interest in Prescott’s assets contingent or conditional.
Moreover, the Legislature has provided for the taxability of contingent interests in N.J.S.A. 54:36-3. This statute provides that “[w]hen an instrument creates an executory devise, or an estate in expectancy of any kind or character which is contingent or defeasible” then the property “shall be appraised immediately at its clear market value.” However, the taxes due are “due and payable ... within two months after the person entitled to the property shall come into the enjoyment, seizin or possession thereof____” N.J.S.A. 54:36-5. The language of these statutes makes clear that our Legislature deemed an interest contingent only when the Will itself makes a conditional bequest. It did not deem the devolution of any property as a contingent interest simply because of the time-gap necessarily involved in the probate of a Will. Thus, in addressing a similar argument, albeit in the context of the inclusion of post-death malpractice action and recovery therefrom, this court observed as follows:
Although the court understands the logic and fairness of plaintiffs argument that a tax on an asset should not be due until the estate has actual possession or an established right of possession of that asset, the legislative design does not follow that logic____In this case, the interest is a post-death settlement award for pre-death attorney malpractice and misappropriation of funds. Plaintiffs argument that these funds are considered contingent future estates covered under N.J.S.A. 54:36-5 is incorrect. A plain reading of that provision indicates that it only applies to interests created by instruments. First, the section applies to taxes due under N.J.S.A. 54:36-3 and N.J.S.A. 54:36-4. Both sections only consider estates created by instruments. N.J.S.A. 54:36-3 states that it applies ‘‘[w]hen an instrument creates an executory devise or an estate in expectancy of any kind or character which is contingent or defeasible____” (Emphasis added). Similarly, N.J.S.A. *303 54:36-4 applies only “[w]hen an instrument creates a power of appointment, the life estate, or estate for a term of years.... ” (Emphasis added). Second, the section applies to “all taxes on property which may be transferred to the residuary legatees, heir or next of kin of a decedent, or which may revert to the heir of a decedent by reason of the failure of a contingency upon which a remainder may be limited____” Ibid. This language, read together and in pari materia with the reference to the other sections of this chapter evidences an intent by the Legislature to limit the applicability to contingencies created by instruments and not post-death settlements.
[Estate of Frost v. Director, Div. of Taxation, 22 N.J.Tax 537, 546-547 (Tax 2005)]
Cf. Fidelity Union Trust Co. v. Price, 18 N.J.Super. 578, 589, 87 A.2d 565 (Ch.Div.) (“[t]he right of a beneficiary to receive income in accordance with the provisions of a will or an inter vivos trust instrument is a vested right”), aff'd in part, rev’d, in part, 11 N.J. 90, 93 A.2d 321 (1952).
Thus, plaintiff has provided no legally cognizable support to her argument that Claire’s interest in her inheritance was a contingent or conditional devise. Indeed, plaintiffs argument that a beneficiary’s interest in property devised by a decedent is contingent until the decedent’s Will is granted probate, or until the court appoints an administrator would, (a) negate N.J.S.A. 3B:l-3; (b) eviscerate the established body of law that for purposes of the Act, a transfer is deemed to occur and should be valued as of the date-of death of the decedent; and (c) render superfluous the Legislature’s specific limitation in N.J.S.A 54:35-1 that the only situation where the inheritance tax is not payable at the decedent’s death is for amounts “recovered as compensation for death of a person caused by a wrongful act, neglect or default.” Interpretations resulting in such consequences must be avoided by the courts. State v. Reynolds, 124 N.J. 559, 564, 592 A.2d 194 (1991).
Last, plaintiffs argument envisages that the inheritance should be viewed and valued as a single asset, as an intangible “property” by itself, with no standardized market. Plaintiff makes this contention presumably because she, as administratrix of Prescott’s estate, distributed a lump sum of about $752,000 in 2006, to Claire’s estate.
Plaintiff may be technically correct in deeming Claire’s inheritance from Prescott as Claire’s “property.” See N.J.S.A. 54:33-1 (defining “estate” or “property” as “the interest of the testator ... *304 transferred to [an] individual”). However, plaintiffs argument is indeed a strained interpretation of this statute. If plaintiffs construction is deemed proper, the Director correctly posits that the entire structure, purpose, and existence of the Act, which imposes a tax upon the right to succeed to a decedent’s property as of the decedent’s date-of-death, will be negated because every beneficiary can argue that all he or she has as of the decedent’s death is an amorphous “right to inherit” even if the actual asset or assets comprising this inheritance can be easily valued. Here, for instance, each item of personal property which was transferred to Claire by Prescott (bank accounts, shares of stock of a publicly traded company, and a death benefit) had a clear market value as of the date of Claire’s death.[5] Plaintiffs argument however, would require ignoring this reality simply in order to accomplish the valuation of the Paxar shares as of the date of distribution (at which time the shares had a lower market value). By contending that on Claire’s death she was only entitled to a potential inheritance which has no market (since no one trades or buys/sells the right to inherit), her estate is achieving indirectly what is legally impermissible, namely, avoidance of a date-of-death valuation. Such result would contravene the clear language, intent and purpose of the Act.
The court thus finds persuasive the Director’s argument that the Act’s scheme and purpose requires a determination of the value of each asset comprising the inheritance. An inheritance of an entire estate of a decedent is an aggregate of a bundle of interests of a testator transferred to a beneficiary. Each such interest represents a separate and distinct unit, and each such interest requires an independent clear market valuation. Indeed, *305 the Director’s regulation recognizes this fundamental concept inasmuch as it makes no distinction in taxing multiple transfers of property by the decedent to the same transferee and one transfer of several properties to that transferee. See N.J.A.C. 18:26-2.10 (“when more than one transfer subject to the tax has been made by a decedent to the same transferee, the tax is computed upon the aggregate clear market value of all of the property so transferred in the same manner and to the same extent as if all of the property had actually been transferred by a single transfer at the date of the decedent’s death”).
Plaintiff maintains that the Director used a post-death 2005 value for the real estate jointly owned by Prescott and Claire therefore he should also use the post-death valuation of the Paxar shares. She notes that the value of this real property ($92,000) was based upon an August 2005 sale by her (as executrix), and the Director accepted this value even though August 2005 was almost a year after Claire’s death. However, plaintiff reported $92,000 as the value of the real property as of the date of Prescott’s death, which was less than two months before Claire’s death. The Director accepted this amount and completed his assessment on Prescott’s estate. Plaintiff conceded that she does not dispute any aspect of the Director’s assessment. She also never provided any information in May of 2009 when the Director requested plaintiff to provide him with “a revaluation of all of’ Prescott’s assets which passed to Claire. Instead, the only information which plaintiff provided him a year later was a contention that the Paxar shares had depreciated in value by about $82,000, the amount by which the Director’s assessment differed from the reported amounts. For plaintiff now to argue that the real property value of August 2005 was not a date-of-death value (an issue never raised in her complaint or her summary judgment motion) is disingenuous in that it is proffered solely to estop the Director from using a date-of-death value for the Paxar shares.[6] Plaintiffs estoppel-type agreement is unpersuasive.
*306 Plaintiff argues that because the Director accepted a liquidation value of the Provident Fund bank accounts, he must accept the liquidation value of the Paxar stock. Plaintiffs counsel certified that as of Prescott’s death, the Provident Fund bank balances totaled $361,177. However the total withdrawals from this account on the final liquidation date of October 2006 was $371,638.28, and thus, interest of $10,561.23 accrued, which accrual was included in the distribution from Prescott’s estate to Claire’s estate. Plaintiffs argument correctly seeks consistent treatment by the Director in that he cannot use a date-of-death valuation for the stock but a date of liquidation value for the bank accounts. However, here, the Director did not do so. His certification states that he used the exact amount reported on Prescott’s return, namely, $361,177, as the value of the Provident Fund Bank accounts. He also used the amounts reported on Prescott’s returns as the value of the other personal assets, except for the Paxar shares.
Although the Dii’ector properly used Claire’s date-of-death to value the Paxar shares, his computation of $23.56 per share is not supported by the undisputed documents presented in this regard. Rather, one document, a webpage excerpt with the auditor’s handwritten notes shows the auditor’s computation of $21.48 per share based on Paxar’s 2004 annual report (which report was not provided to this court). Another document shows the high-low trading prices as of the third and fourth quarters of 2004. Neither document provides the high-low price as of Claire’s date of death for purposes of N.J.A.C. 18:26-8.18(a), nor do they show the “previous” day’s high-low sale price for purposes of N.J.A.C. 18:26-8.18(a)(1). If the Director deemed applicable the high-low sale price for the last quarter of 2004 for purposes of N.J.A.C. 18:26-8.18(a)(1) (since Claire died November 7, 2004 which is in *307 the last quarter of 2004 and the regulation allows an alternative value, namely, the average of the high-low sales price on the nearest trading day prior to the date of death), then the auditor’s computation of $22.50 (average of the high-low sale price for the last quarter of 2004) should prevail.[7]
Generally, this court will not disturb the Director’s findings due to his expertise in the field of taxation and the presumptive correctness accorded therefrom. However, here, his computation of the per-share-value of Paxar Corporation as of November 7, 2004 (Claire’s date-of-death) lacks sufficient detail so as to substantiate his computation. Therefore, the court will take judicial notice of the prices for which the Paxar stock traded on the New York Stock Exchange on November 7, 2004, which information was available in the Business Section of the New York Times published on that date. See Evid. R. 201(b)(1); (3) (permitting judicial notice of “specific facts ... as are so universally known” that they “cannot reasonably be” disputed or of specific facts “which are capable of immediate determination by resort to sources whose accuracy cannot reasonably be questioned”); Pugh v. Tribune Co., 521 F.3d 686, 691, n. 2 (7th Cir.2008) (interpreting analogous Fed.R.Evid. 201 and finding court can take “judicial notice of documents in the public record, including publicly reported stock prices”).[8]
Claire’s death was on Sunday, November 7, 2004. The nearest trading date prior to November 7 was Friday, November 5, 2004. On that date, the high/low prices for Paxar stock was $22.00 and $21.34 respectively, providing an average of $21.67. See N.J.A.C. *308 18:26-8.18(a)(1). This provides a total value of the Paxar shares as $479,362.07 (22,121 shares times $21.67). This in turn reduces the Director’s assessment from $865,056.53 to $823,259.60.[9]

CONCLUSION

The Director’s final determination is upheld except as mathematically amended above. The Director will re-eompute the tax and interest, and the corresponding refund if any, due to plaintiff. The defendant will submit an Order in this regard within ten (10) days of the date of receipt of this Opinion, after which the court will enter a final order and judgment.

 The Director characterized this itemization as the value attributed by Claire's estate to Claire's "inheritance from Prescott Schinestuhl'' and that on "October 12, 2006'' Prescott's estate "issued a distribution'' to Claire's estate "in the amount of $752,328.'' When the court pointed out that the excerpt from a check register indicated that on October 8, 2006, the balance in the bank account of Prescott's estate was $752,328, and on October 12, 2006, a "partial distribution" in the amount of $740,000 was made to the "Estate of Claire Schinestuhl,” plaintiff's counsel maintained that the amount of $752,328 reported on Claire's tax return as the cash distribution from Prescott's estate was correct.

 The Director maintained that the plaintiff's summary judgment motion should be stricken due to procedural irregularities such as including certain *298 information prohibited by R. l:38-7(b); including the Director's answers to interrogatories which was prohibited by R. 4: X 7—8(b); omitting or including improper references to the documents in plaintiff's undisputed material facts; and omission of any certification by plaintiff establishing the authenticity of the documents attached in support of plaintiff's motion. Plaintiff responded by maintaining that the Director's motion was untimely. The court ruled that plaintiff’s motion was proper except to the extent of R. 1:38—7(b), which rule was also violated by the Director in his moving papers, and both parties were permitted to rectify their oversights after oral argument on the substantive merits of the parties' respective summary judgment motions.

 Tax on amounts recovered for the wrongful death of a person, whether by award or settlement, is however payable upon "the date of [the] award or settlement." N.J.S.A. 54:35-1.

 Cf. N.J.A.C. 18:26-2.12 ("[i]f a transferee under a will or by operation of law disclaims or renounces his rights thereunder, or any portion thereof, the dis- *300 ciaimer or renunciation is given effect in computing the tax against the estate ...” if a timely document in this regard is filed).

 During oral argument, plaintiff stated that if Claire inherited only Prescott’s bank balances, she would not quarrel with its date-of-death value since it is cash and thus, raises no issue of clear market value. However, if the basis of plaintiff's argument is that “inheritance’’ is itself a non-marketable asset or property and represents at most a contingent interest until its actual receipt, then it should not matter to plaintiff whether the inheritance comprises of bank balances or cash bequests or any other personal property which has an ascertainable clear market value.

 The Director credibly argues that he accepted the date-of-death values of the various assets or properties reported on Prescott’s inheritance tax return as their *306 respective values as of Claire’s date-of-death because there was a barely two-month gap between the deaths, and plaintiff proffered no evidence to establish that the values changed significantly in the two-month period, and that he verified the stock prices against the publicly available stock exchange information. Note that plaintiff filed Prescott’s tax return in 2005, but filed Claire’s tax return in 2007.

 The Director did not indicate that his $23.56 per share computation was obtained from "the prorated value used for Federal estate tax purposes reflecting the mean between the highest and lowest selling price on the nearest trading dates prior to and subsequent to the date of death____” under N.J.A.C. 18:26-8.18(a)(1), nor did he provide information as to the high/low prices and the trading dates he used.

 Pursuant to Evid. R. 201(e), this court notified each party of the court's intent to take judicial notice of the trading prices for Paxar as listed on the New York Stock Exchange about the time of Claire's date of death. Neither party had any objection in this regard.

 This is derived by totaling the items included by the Director as the value of Prescott’s assets on Claire’s death, less the deductions, see supra, but substituting the Paxar stock's value with the court’s calculation.